ELDER vs. WARFIELD.—June, 1826.

Every collateral undertaking to answer for the debt, &c. of another is, by the statute of frauds, void, if not in writing; but original undertakings are not within the statute, and need not be in writing.

Where there is a preexisting debt, or other liability, a promise to pay by a third person, having immediate respect to, and founded upon, such debt or liability, without any new consideration moving to him, is a collateral undertaking, and is within the statute.

ELDER v. WARFIELD.—1826.

But where, distinct from the original liability, there is a superadded consideration for the promise, moving between the party making it, and him to whom it is made, the undertaking is an original one, and is not within the statute.

Where there is no previous liability, but the promise of one is the inducement to, and ground of, the credit given to another, such promise is also a collateral undertaking, and within the statute; the rule being, that wherever the party undertaken for, is originally liable upon the same contract, the statute applies; but where such party is under no original liability, the promise is an original undertaking, not embraced by the statute, and is good, and his becoming liable afterwards does not alter the rule, though not in writing.

In cases of this kind of the sale of goods, &c. the liability of the parties obtaining them depends upon the question, to whom was the credit given? And that is a question for the decision of the jury; though there are cases under the statute in which the liability of the party undertaken for, is a question of law. The debiting the party obtaining goods with them in the books of the vendor, not conclusive evidence that the credit was given to him.

In an action upon a valid collateral undertaking to pay the debt of another, the declaration must be on the special promise; but upon an original undertaking the proper remedy is *indebitatus assumpsit.*

APPEAL from *Baltimore* County Court. *Assumpsit.* The defendant, (the now appellant,) pleaded the general issue. At the trial the plaintiff, (the appellee,) offered in evidence, by *Alfred Warfield,* the plaintiff's brother and clerk, that in the year 1817, the plaintiff was applied to by *Joseph Berrett* to furnish him with necessaries for his family, on credit; that the plaintiff, having doubts of *Berrett's* solvency, declined to do so, and refused to let him have the goods he applied for. That at this time the defendant lived on part of a farm belonging to *Berrett's* wife, in what character, whether as manager, overseer or trustee, he knew not. That subsequently the defendant called and requested the plaintiff, through the witness, to let *Berrett* have goods, &c. which he wanted, and told the plaintiff that *Berrett* was perfectly solvent, and did not owe more than $500, and was willing and able to pay his debts; that *Berrett* had recently sold property in *Baltimore* for a considerable sum of money, and the plaintiff should be paid out of it. The plaintiff still doubted, when the defendant told him to let *Berrett* have goods, and he would be responsible for the amount, and pay it out of the proceeds of the said sale of *Berrett's* property, which he

the defendant expected to receive. This agreement was not reduced to writing, or any memorandum made of it. The plaintiff in the years 1817, 1818 and 1819, let *Berrett* have various goods, wares and merchandize. The plaintiff further gave in evidence, by the same witness, that after the conversation aforesaid, between the plaintiff and defendant, *Berrett* upon his orders, obtained at different times, goods and merchandize to the amount of $523, being the same goods and merchandize for the recovery of whose value the action was brought. And further proved, by the witness, who during that time kept the plaintiff's books, that the said goods, as they were sold, were charged to *Berrett*, and that the whole account stands on the ledger of the plaintiff, headed "Mr. *Joseph Berrett* to *Charles D. Warfield*, Dr." with the words "*assumption*, or *securityship*, or *guarantee*, of *John Elder*," (the defendant.) The witness did not certainly remember which word, but believes it was "*guarantee*" written opposite, and he considered them synonymous. The plaintiff also proved by the same witness, that the account produced was frequently presented to the defendant, who promised to pay, and that the signature *Charles D. Warfield*, to the receipt at the bottom of said account, was the plaintiff's. "*Baltimore* county, 27th March, 1819. Rec'd. of Mr. *J. S. Berrett*, a note for five hundred and twenty-three dollars, being for the above account, and a note of his for one hundred and fifty-seven dollars and three cents, which, when paid, will be in full. The note bearing date the 27th March, 1819, is payable at six months. *Chas. D. Warfield.*"

That the said account was also frequently presented to *Berrett.* The plaintiff further gave in evidence, that the note mentioned in said receipt for $523 given the plaintiff by *Berrett* and his wife, was taken at the defendant's request, and by his suggestion; and that after the said goods were furnished to *Berrett*, and before the said note was taken, and after it was taken, the defendant acknowledged himself to be answerable to the plaintiff for the said debt, and promised to pay it, but never gave any written acknowledgment or promise, or signed any memorandum in writing to that effect. The plaintiff further gave in evidence, that *Berrett* resided in *Baltimore* before his removal to the country, and in 1812 applied for the benefit of

the insolvent laws, and was discharged; that in 1813 he again applied and obtained a discharge, and also in 1819. He also offered evidence by *Matthew Murray*, that in 1817, *Berrett* was considered insolvent, and that the defendant paid the fees due from *Berrett* to him for 1817 and 1818, and offered an acknowledgment for the fees for 1819. He also offered evidence by *Walter Worthington*, that the defendant told the witness that he was willing to pay the plaintiff's claim, and considered himself responsible, but that he had been desired not to do so by *Columbus O'Donnell*, and had received from said *O'Donnell* a bond of indemnity in the event of a judgment against him; that the defendant had had property assigned him by *Berrett*, which he had conveyed to *O'Donnell*. The defendant then prayed the opinion of the court, and their direction to the jury, that on the whole of the said evidence, the plaintiff was not entitled to recover; which opinion and direction the Court, [*Archer*, Ch. J. and *Ward*, A. J.] refused to give. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, and DORSEY, J.

*R. Johnson*, for the Appellant, contended, that the promise of the appellant to pay the debt being in parol, notwithstanding the circumstances in the case, was void under the statute of frauds. He referred to the statute in *Rob. on Frauds, Appendix*, 467. *Buckmyer vs. Darnall*, 2 Ld. Raym, 1085. *Matson vs. Wharam*, 2 *T. R*, 80. *Anderson vs. Hayman*, 2 *H. Blk.* 120. 1 *Com. on Cont.* 53. 1 *Bac. Ab.* tit. *Agreement*, 123. *Lamborn vs. Watson*, 6 *Harr. & Johns.* 252; and *Lamborn vs. Moore*, Ib. 422.

*C. S. W. Dorsey*, for the Appellee, cited *Phillips vs. Bistolli*, 9 *Serg. & Low.* 163. *Davis vs. Davis*, (ante 36.) *Burt vs. Gwinn*, 4 *Harr. & Johns.* 507.

BUCHANAN, Ch. J. delivered the opinion of the Court. The bill of exceptions, on which this case is brought up, was taken to the refusal of the court below to direct the jury that the plain-

tiff was not entitled to recover; and the *fourth section* of the statute of frauds, by which it is provided, "that no action shall be brought, whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage, of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto, by him properly authorised," is relied upon to sustain the appeal.

The record does not inform us why the court refused to give the direction prayed; whether on the ground, that in the opinion of that tribunal, upon the facts in the cause, the plaintiff was entitled to recover, or because it was deemed the province of the jury to determine to whom the credit was originally given. The statute of frauds has furnished a wide field for the exercise of judicial ingenuity; and it is perhaps to be regretted, that in the range of construction any of its provisions should have been infringed or evaded.

A strict adherence to the letter, would, it is believed, have prevented much litigation, of which the introduction of exceptions has proved a fruitful source; it may now, however, be assumed, as the settled construction of that branch of the *fourth section*, on which this case depends, that every collateral understanding, or promise, to answer for the debt, default or miscarriage, of another, is within the statute, and void, *if not in writing*; but that original undertakings are not within the statute, and need not be in writing.

*Collateral* and *original*, have become the technical terms, whereby to distinguish promises that are within, and such as are not within the statute. And as they are terms not used or defined in the statute itself, it may here be proper to notice the general distinguishing characteristics of collateral and original promises, as understood in relation to the statute of frauds.

Where there is a preexisting debt, or other liability, a promise by a third person, having immediate respect to, and founded upon the original liability, without any new consideration moving to him, to pay or answer for such debt or liability, is a collateral undertaking—as in the case of *Fish vs. Hutchinson*, 2 *Wils.* 94, which was an action founded on a promise by the

defendant to pay a debt due from one *Vickars* to *Fish*, (for which *Fish* had brought suit,) in consideration that *Fish* would stay his action against *Vickars*, which being a promise to pay the still subsisting debt of another, was held to be clearly within the statute. And so in *Kirtham vs. Martin*, 2 *Barn. & Ald.* 613, where *A* having wrongfully killed the horse of *B*, a promise by *C* to pay *B* the damages he had sustained, in consideration that he would not sue *A*, was adjudged to be within the statute.

But where, distinct from the original liability, there is a new and superadded consideration for the promise, moving between the party promising, and him to whom the promise is made, in such case it is an original undertaking—as in *Williams vs. Leper*, 3 *Burr.* 1886, where the defendant, having got possession of goods which were subject to distress for rent in arrear, promised the landlord, (the plaintiff,) to pay him the rent, if he would desist from distraining.

There the promise by the defendant was to pay the amount of rent due from another; but the parting by the landlord with his lien on the goods in the defendant's possession, and thus relieving them from liability to be distrained upon, was a new and superadded consideration, moving between the landlord and the defendant, and the immediate ground of the promise.

There are many cases proceeding upon this distinction, between a promise founded upon the liability alone of a third person, and one which is induced by a distinct and superadded consideration moving between the immediately contracting parties—as *Anstey vs. Marden*, 4 *Bos. & Pull.* 130; *Castling vs. Aubert*, 2 *East*, 325; and *Read vs. Nash*, 1 *Wils.* 305.

Again, where there is no previously existing debt, or other liability, but the promise of one is the inducement to, and ground of, the credit given to another, by which a debt or liability is created in him to whom the credit is given, such a promise is a collateral undertaking.

The general rule being, that wherever the party undertaken for, is originally liable upon the same contract, the promise to answer for that liability is a collateral promise, and must be in writing. As if *B* gives credit to *C* for goods sold and delivered to him, on the promise of *A* to *see him paid*, or *to pay*

*him for them if C should not,* in that case it is the immediate debt of *C,* for which an action will lie against him, and the promise of *A* is a collateral undertaking to pay that debt, he being only as a security.

But where the party undertaken for is under no original liability, the promise is an original undertaking, and binding upon the party promising, without being in writing. Thus, if *B* furnishes goods to *C,* on the express promise of *A* to pay for them, as if *A* says to him, let *C* have goods to such an amount, and I will pay you; and the credit is given to *A,* in that case *C* being under no liability, there is nothing to which the promise of *A* can be collateral; but *A* being the immediate debtor, it is his original undertaking, and not a promise to answer for the debt of another. The case of *Buckmyer vs. Darnall,* 2 *Ld. Raym.* 1085, may be considered a leading and instructive case on this subject. And *Watkins vs. Perkins,* 1 *Ld. Raym.* 224; *Harris vs. Huntback,* 1 *Burr.* 371. *Jones vs. Cooper,* 1 *Cowper,* 227; *Matson vs. Wharam,* 2 *T. R.* 80; *Anderson vs. Hayman,* 1 *H. Blk.* 120; and *Keate vs. Temple,* 1 *Bos. & Pull.* 158—are illustrative of this general position, *that whether a promise is collateral or original, depends upon the liability of the party undertaken for.*

Hence the first point of inquiry in such cases is, *whether the party undertaken for, is liable at all on the contract; or, to whom the credit was originally given?* The existence of such liability being implied in the very notion of a collateral undertaking.

In ascertaining which, the extent of the undertaking, the expressions used, the situation of the parties, and all the circumstances of the case, should be taken into consideration; and in the case of goods, &c. furnished for the use of one at the instance of another, where the undertaking is collateral, the declaration in an action for the amount, founded on such collateral un er king, must be on the special promise.

But where it is an original undertaking or promise, the proper remedy is the action of *indebitatus assumpsit.*

This is an action of general *indebitatus assumpsit,* for goods furn he to *Joseph Berrett,* at the instance of the appellant, which is resisted on the ground of a supposed subsisting liabi-

lity on the part of *Berrett*, to whom it is contended the credit was originally given, and therefore, that the promise of the appellant not being in writing, was void under the statute of frauds.

If *Berrett* was originally liable, it is very clear that the promise of the appellant was merely collateral, and within the statute; but whether he was or was not liable, depends upon the further question, *to whom was the credit given?* For if the credit was not given to him, but to the appellant, then it was not his debt, but the immediate debt of the appellant, for which he is liable in this form of action, notwithstanding the promise was not in writing, being an original undertaking, and not a collateral promise, within the statute, to answer for the debt of another.

And even if *Berrett* has since become liable, such subsequent liability cannot have the effect to alter or change the original character of the appellant's promise; but such as it was at the time of the contract, it is now. The inquiry therefore, at the trial, should have been, *what was the predicament of the parties at the time the goods were delivered; was the credit given to Berrett on the suretyship of the appellant, or was it given to the appellant himself alone?* And not whether by subsequent circumstances, *Berrett* had rendered himself liable.

It is the undoubted province of the court, to determine questions of law, arising upon the facts of a cause, and the equally unquestioned province of the jury to decide the questions of fact. Whether the party undertaken for, was originally liable at all upon the contract, is not always a question of fact, but there are cases in which it is a question of law to be decided by the court. As in *Buckmyer vs. Darnall*, before cited, which was an action against *Darnall* on his undertaking, that if the plaintiff would hire a horse to one *English, English* would redeliver him.

There the point of inquiry was, not to whom the credit was given, but whether by operation of law *English* was liable on the contract; or whether, if liable at all, it was not a liability growing out of a subsequent wrong, as the converting the horse to his own use, which was a mere question of law. And the court being of opinion, that *English* was liable to an action of detinue, on his implied promise upon the bailment to redeliver

the horse, it was determined, the delivery, the implied contract for redelivery arising upon the act of delivery, and the undertaking by *Darnall*, being all coincident in point of time, and constituting one entire transaction, that the promise of *Darnall* was collateral.

But here the point of inquiry at the trial was, *to whom the credit was given?* Which was purely a question or inference of fact from the evidence, to be found by the jury, upon which the legal responsibility of the appellant on his promise depended.

The court, therefore, did right in refusing to give the direction prayed; which if they had done would have been to decide the fact, that the credit was given to *Berrett*, and to take from the jury a question which it was their province to decide, on a consideration of all the circumstances of the case.

Much stress has been laid on the circumstance that *Berrett* was debited on the books of the plaintiff, as tending to show that the credit was given to him. But however strong it may be supposed, it was only a circumstance to be submitted, with all the other evidence in the cause, to the jury—as in *Anderson vs. Hayman*, 1 *H. Blk.* 120, which is very similar to this case.

With the finding of the jury, whether right or wrong on the evidence, we have nothing to do, the case is not before us on a motion to set aside the verdict. The question, which we are called upon to decide, is whether it was a matter fit to be left to the jury? And we think it was.

JUDGMENT AFFIRMED.