(Decided 2d July, 1869.)

JAMES MYER and AUGUST EWALDT, trading as JAMES
MYER & CO. *vs.* J. W. GRAFFLIN.

*Statute of Frauds—Collateral or Original Undertaking—Province of the Jury.*

To ascertain whether an undertaking to pay the debt of another, be collateral or original, the inquiry is, to whom was the credit given at the time of the sale and delivery of the goods? And this is a question for the determination of the jury.

The debiting a party obtaining goods, with them on the books of the vendor, is not conclusive evidence that credit was given to him, but only a strong circumstance to be submitted with all the other evidence in the cause to the jury.

APPEAL from the Court of Common Pleas.

This was an action of *assumpsit*, brought by the appellants against the appellee, to recover the sum of $253$\frac{16}{100}$ for goods sold and delivered. The defendant pleaded, "that he never was indebted as alleged," and "that he did not promise as alleged."

Upon the trial, the plaintiffs proved by James Myer, that the firm of James Myer & Co., the plaintiffs, was composed of the witness and Augustus Ewaldt, and that the witness was the senior partner of the firm; that in

the month of November, 1865, a certain Robert Spear and J. B. Pratt called at the store of the plaintiffs and priced certain articles, and asked the witness if he would sell the goods to them upon a short credit; he did not know either Spear or Pratt, and declined to let them have the goods, unless they would give him some responsible person in the city of Baltimore, who would be responsible for the payment of them; that the name of the defendant was then given as paymaster for the goods, Spear stating at the same time that he and Pratt were in the employment of the defendant, in cutting wood and getting lumber somewhere on the Eastern Shore of Maryland; the witness expressed himself satisfied with the defendant as paymaster, and delivered the goods to Spear & Pratt, and took from them in settlement a draft or bill, drawn by them upon the defendant, for the sum of $79.89, the amount of the goods then sold and delivered; that this draft or bill was then presented to the defendant for his acceptance, and was accepted and duly paid by him at its maturity; that subsequently, in the month of November, 1865, Spear (and the witness thought Pratt was with him) called again at the store of the plaintiffs, and priced and selected other goods, amounting to the sum of $85.94, and gave in settlement, therefor, a draft or bill drawn by him upon the defendant for the amount, payable at twenty days, which draft or bill was presented to the defendant for acceptance, was duly accepted by him and paid at its maturity in bank, where it had been deposited for collection; that subsequently, in the month of December, in the year 1865, the witness presented to the defendant for his acceptance, another draft drawn by Spear upon him, for the sum of $213.74, which had been given to the plaintiffs by Spear, in settlement for other goods furnished to Spear & Pratt; that the defendant demurred somewhat to accepting this last draft, stating that he did not like

people to be drawing upon him in that way, or words to that effect; but after some little demurring, the defendant accepted the draft, and it was paid at maturity in bank, where it had been deposited for collection.  The plaintiffs further proved by the witness Myer, that subsequently, on the 28th day of December, 1865, Spear & Pratt called again at the store of the plaintiffs, and priced, set apart, and had marked certain other goods which they desired to purchase in the same way they had previously dealt with the plaintiffs, but that he, in consequence of the defendant's demurring to the accepting of the draft last mentioned, refused to let Spear & Pratt have the said goods, until he had first seen the defendant about it.  The witness saw the defendant, and told him that Spear & Pratt wanted more goods, which he would not let them have, unless the defendant would be responsible for them; that the defendant replied to witness to let the goods go; that it was all right; that he had demurred to accepting the last draft, because he did not then understand it, but that he knew all about this bill, and that the plaintiffs could let the goods go,—and that upon the faith of that conversation the goods were delivered by the plaintiffs to Spear & Pratt, amounting in price to the sum of $253.16, which is the claim sought to be recovered in this suit. The goods last mentioned were charged upon the books of the plaintiffs to Spear & Pratt, in the same manner as all the previous sales had been charged.  The pecuniary ability of Spear & Pratt was unknown to the plaintiffs, and in the sale of the goods, the plaintiffs looked alone to the defendant for payment; that the goods were sold to him, and to him the plaintiffs looked for payment.

The defendant then being sworn as a witness, proved that he never had authorized Spear to draw drafts upon him, or to obtain goods upon his credit; that he had never paid to the plaintiffs but one demand for goods sold by

them to Spear & Pratt, and that demand he paid to prevent a protest, which Mr. Myer, one of the plaintiffs, threatened, Spear being at the time out of town. That witness thinks that claim was upon a promissory note of Spear, and knows that, whether it was a note or a bill, the defendant's name was not upon it at the time Myer presented it to him; the witness further proved that he never had, at any time, authorized the plaintiffs, or either of them, to let either Spear or Pratt have goods upon his credit; that he had never seen the plaintiff, Myer, but once before he presented the bill now in suit for payment, and that was at the time when he paid a demand to prevent protest, and that he should have thought what he then said to Myer would have prevented his selling any more goods to Spear & Pratt. The witness further stated that when Myer demanded from him payment for the goods, the price of which is sought to be recovered in this suit, Myer stated that the goods had been already delivered to Spear & Pratt; that the goods sued for were charged in the bill shown by the plaintiff (Myer) to the defendant, to Spear; and upon that bill, so made out, Myer afterwards demanded payment of the defendant.

The plaintiffs further proved by the defendant, upon cross-examination, that upon an examination of his papers, he found that he had accepted and paid three drafts or bills drawn by Spear upon him, in favor of the plaintiffs, and produced the drafts, which were the same referred to by the plaintiff, Myer.

The defendant further proved by his bookkeeper, that he was present at the last interview between Myer and the defendant, spoken of by the defendant in his testimony in chief, and corroborated the statement of the defendant in that particular; and stated, upon cross-examination, that he heard what the defendant said upon that occasion, but did not hear what Mr. Myer then said; that

the defendant was close to the witness, and that he heard the defendant say that he would not assume the bill.

The defendant then asked the Court to instruct the jury as follows:

1st. That the evidence in this case is not legally sufficient to charge the defendant as upon an original undertaking, not collateral to the liability of Robert Spear, for the goods sold and delivered to him.

2d. That if the jury shall find from all the evidence in the cause, that the goods mentioned in the bill of particulars, offered in evidence, and for the amount of which this action is brought, were sold and delivered to Robert Spear at his instance and request, and upon his credit, then the plaintiffs are not entitled to recover—notwithstanding they should find that the defendant subsequently offered to pay for a part of said goods.

The second prayer the plaintiffs' counsel admitted to be correct, but denied the correctness of the first prayer, and objected to its being granted by the Court. The Court overruled the objection and granted the prayer, withdrawing from the jury the consideration of all the facts in the case. The plaintiffs excepted, and the verdict and judgment being for the defendant, they appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER and ROBINSON, J.

*William C. Schley* and *St. George W. Teackle*, for the appellants.

*William Pinkney Whyte*, for the appellee.

MILLER, J., delivered the opinion of the Court.

There is no difficulty about the construction of the part of the fourth section of the Statute of Frauds relied on by the appellee as a defence to this action. That is clearly

settled by the case of *Elder vs. Warfield*, 7 *H. & J.*, 391, which has been followed and approved by all the subsequent decisions in this State upon the same subject. To ascertain whether the defendant's undertaking was collateral or original, the point of inquiry in the case before us is, to whom was the credit given at the time of the sale and delivery of the goods, and we are clearly of opinion the Court below erred in taking from the jury the determination of this question by granting the defendant's first prayer. The refusal of a similar instruction in *Elder vs. Warfield* was affirmed by this Court upon evidence less favorable to the plaintiff, and the defendant's counsel has conceded the granting of his prayer would have been erroneous, but for the decision in *Cropper vs. Pittman*, 13 *Md.*, 190. There is not only no conflict between the two decisions, but the latter expressly recognizes and adopts the former. The doctrine of both, as well as of *Connolly vs. Kettlewell*, 1 *Gill*, 260, is that where credit is given to one on the promise of a third party "to see him paid," the undertaking of the latter is collateral and void under the Statute, unless in writing, and where the party undertaken for is originally liable on the same contract, the promise to answer for that liability is a collateral and not an original undertaking, unless there is a new and superadded consideration moving between the party promising and him to whom the promise is made. But it is conceded in *Cropper vs. Pittman* that it does not follow in every case where the words " I will see the bill paid " are used, they necessarily import a collateral undertaking. If accompanied by other words or facts sufficient to authorize a jury to find from all the evidence that *credit was given* to the party using them and the jury so find, he will be held responsible. It is decided in *Cropper vs. Pittman*, following in this respect *Connolly vs. Kettlewell*, that such words *standing alone* import a collateral undertaking,

and the jury must be so instructed as to their legal effect. In that case the defendant introduced his brother to the plaintiff, saying, his brother intended to go into business in Virginia, and wished to purchase a bill of goods, and said "he would see the bill paid." The brother then selected a bill of goods and they were put aside, but before delivery the plaintiff's clerk went to the defendant and asked him if he would accept a draft for the bill if the plaintiff would give two months' extra time. This proposition the defendant declined, but said he would see the bill paid, as he expected his brother would consign produce to him in three months, and he would appropriate the amount to pay the bill, and again remarked "he would see the bill paid if his brother purchased the goods of the plaintiff." When this conversation was reported to the plaintiff, the goods were delivered to the brother, and charged to him on the plaintiff's books; and there was also proof tending to show the plaintiff at the time took the brother's bond or note for the bill of goods thus purchased. Upon this evidence the Court say they could not doubt that the brother was liable for the goods delivered to him, or that the plaintiff considered him as debtor for them; that they were selected by and charged to him, and there was nothing to show he was not credited by the plaintiff. Hence the case was such that the Court could see the evidence was not legally sufficient to charge the defendant as upon an original undertaking not collateral to the liability of another, and therefore said there was no propriety in sending the parties to a jury. But in the present case the evidence is essentially different. According to the testimony of Myer, one of the plaintiffs, there is positive proof that the plaintiffs in the sale of the goods in question looked alone to the defendant for payment, and that the goods were in fact sold to him. From *all the testimony* of this witness, if believed by them, the

jury were at liberty to find the credit at the time of sale and delivery of the goods was given to the defendant, and that there was no credit given to, or original liability on the part of, either Spear or Pratt therefor. The fact that Spear was debited with the goods on the books of the plaintiffs is not, as was decided in *Elder vs. Warfield*, conclusive evidence that the credit was given to him, but only a circumstance, strong it is true, to be submitted with all the other evidence in the cause to the jury.

*Judgment reversed, and procedendo awarded.*

(Decided 27th October, 1869.)