## THE EAST BALTIMORE LUMBER CO. *vs.* THE K'NESSETT ISRAEL AUSHE S'PHARD CONGREGATION ET AL.

*When Promise to be Responsible for Debt of Another Original and not Within the Statute of Frauds—Questions for the Jury—Church not Liable for Unauthorized Contract of its President.*

The contractor for rebuilding a church applied to plaintiff for a supply of lumber but was refused because plaintiff was doubtful of his financial responsibility. The contractor then took plaintiff to see the defendant, the president of the church, to whom plaintiff said that he would not sell to the contractor nor supply the lumber unless the defendant or the church would be responsible for it. Defendant replied: "We are in a hurry for that church, you put the goods there and I will see positively that you get your money" Thereupon the lumber was furnished and charged on plaintiff's books to the contractor or the church. In an action to recover the price thereof against the defendant, *held*, that the

evidence is sufficient to take the case to the jury, and if they find that the main object of the defendant was not to answer for the debt of the contractor but to subserve his own purpose to have the church built, then the defendant's promise is not within the Statute of Frauds, and if the jury further find that credit for the lumber was given to the defendant, the plaintiff is entitled to recover.

When lumber was furnished to a contractor for rebuilding a church in reliance upon the promise of the president of the church that he and the church would be responsible for it, and the president had no authority to bind the church, then the latter is not liable therefor.

Appeal from Baltimore City Court (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*William S. Bansemer* (with whom was *R. B Tippett & Bro.* on the brief), for the appellant.

*Edgar A. Poe* and *Jacob J. H. Mitnick* (with whom was *John P. Poe* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant sued the appellees on the common counts in *assumpsit* in the Baltimore City Court for the price of certain lumber furnished by it to one Sidney McCall and used by him in rebuilding a church edifice on High street owned by the appellee congregation. It was sought to hold the appellees liable under a verbal promise, to pay for the lumber upon the ground that it was an original undertaking which the Statute of Frauds did not require to be in writing.

At the close of the plaintiff's evidence the Court granted the defendants' prayers taking the case from the jury because the evidence was not legally sufficient to charge the defendants as upon an original undertaking not collateral to the liability of McCall for the lumber. The jury under the Court's instruction rendered a verdict for the defendants and judgment was entered thereon from which this appeal was taken. At the hearing in this Court the appellant abandoned its case as to the appellee Silberman.

There is clearly no evidence in the case legally sufficient to affect the defendant congregation with liability for the plaintiff's claim.   The only evidence of any undertaking on its part is the proof that its president, Walderman, told the plaintiff's manager that he and the church would see it paid for. The plaintiff did not rely upon the *prima facie* presumption that the president of a corporation has ordinarily power to bind it by a contract like the one under consideration and leave it to the defendant to overcome the presumption by proof. The plaintiff put the president, Walderman, on the stand as its own witness and interrogated him on that subject and he testified not only that he had never made any contract on behalf of the congregation but that he had no authority to make any, and that the by-laws of the congregation strictly prohibited its officers from incurring pecuniary obligations for its account without its consent.   He further testified that the congregation had appointed a committee for the purpose of contracting for the rebuilding of the church and that this committee had made a written contract for the rebuilding with McCall which had been submitted to the congregation in meeting assembled and approved by it before execution, and that the same meeting had authorized him to sign the contract as president and that he had done so.

The remaining issue in the case and the one to which the briefs and arguments of counsel were chiefly addressed is that of the legal sufficiency of the evidence offered to prove that the promise of the defendant Walderman touching the payment for the lumber was an original undertaking on his part and not collateral to the liability of McCall.   In *Meyer* v. *Grafflin*, 31 Md. 350, in construing the fourth section of the Statute of Frauds, it was held, upon a review of the earlier cases of *Elder* v. *Warfield*, 7 H. & J. 391; *Conolly* v. *Kettlewell*, 1 G. 260, and *Cropper* v. *Pittman*, 13 Md. 190, to be the settled law of this State that the real point of inquiry in ascertaining whether the undertaking of the defendant, in a case like the present one, was collateral or original is to whom was the credit given at the time of the sale and delivery of the

goods.  This is ordinarily a question of fact for the jury, although, when the Court can see that the evidence is not legally sufficient to tend to show that the credit was given to the defendant, the case should not be sent to the jury.  The circumstances accompanying the whole transaction may be looked to in ascertaining the understanding of the parties.

In the present case McCall having made a contract with the defendant congregation to rebuild its church set out to purchase the necessary lumber for the operation.  He got prices from different lumber dealers including the plaintiff and being pleased with the plaintiff's prices offered to buy from it, but it refused to sell to him because of his lack of financial responsibility.  He then took Coleman, the plaintiff's manager, with him to see Walderman, the president of the congregation, about the matter and they both testified for the plaintiff as what transpired at that interview.  Coleman said in his testimony: "I told Mr. Walderman we do not consider Mr. McCall responsible and we would not go into the contract and furnish the material there unless Mr. Walderman or the church would be responsible for it.  Mr. Walderman said to me 'we are in a hurry for that church and you go put the goods there and I will see positively that you get your money,' and I went and reported the conversation of Mr. Walderman to our president."  *  *  *  "I told Mr. Walderman that we would not sell to Mr. McCall and Mr. McCall was present."  The witness further testified that after the appellant had made inquiries as to Walderman's financial responsibility and found that he was a man of some means it was satisfied to take the risk and furnish the lumber.  He also testified that he, as representing the plaintiff, "had made no contract with McCall about selling him the lumber."

McCall in his account of the interview with Walderman said, when on the stand, "Mr. Coleman told the president of the congregation, Mr. Walderman, that he didn't feel like trusting me with that amount of lumber, and that I was not responsible and in the second place he was furnishing it on a church and didn't feel like furnishing a church as well as they would an

individual, any other transaction; and during that conversation Mr. Walderman told Mr. Coleman to furnish the lumber and he and the church would see it paid"    *    *    *    "Mr. Coleman told Mr. Walderman that he would make a report to the firm.    The next day he (McCall) learned when he went to the office of the East Baltimore Lumber Company that they were going to send the goods."

The plaintiff's shipping clerk testified, "that he had sent to Sidney McCall at the High Street Church" the lumber sued for and it was agreed by counsel that the lumber "was charged to said McCall or to said McCall High Street Church in all of the books of the plaintiff."    The plaintiff's bookkeeper testified that he had sent the bills for the lumber to McCall and its manager, Coleman, testified that he was pretty positive that it had filed a claim for the lumber with Mr. Ward, the trustee of McCall, who had in the meantime failed in business.

It is apparent from this evidence that Walderman did not promise to be answerable for an already existing debt of Mc-Call's; but after he had been informed of the plaintiff's refusal to sell to McCall he urged it to put the goods at the church and positively promised if that were done to see that the plaintiff got its money, giving as his reason that he was anxious to see finished the building on which the lumber was to be used and in which he had a sentimental if not a financial interest. In *Schaeffer* v. *Small*, 24 Md. 161, this Court recognized as a well-known exception to the operation of the Statute of Frauds that "wherever the main purpose and object of the promisor is not to answer for another but to subserve some purpose of his own his promise is not within the statute, although it may be in form a promise to pay the debt of another" and cited a number of authorities in its support.

The form of the defendants promise "I will see you paid" as testified to by McCall primarily imports a collateral promise to answer for the debt of another, and the facts that the lumber was charged to McCall and the bills for it were sent to him *prima facie* indicate a purpose to give credit to him but neither of these circumstances nor all of them together are conclusive

if accompanied by other words or facts sufficient to authorize a jury to find from all the evidence that credit for the lumber was in fact given to Walderman.

In view of the testimony of Coleman that the plaintiff refused to sell the lumber to McCall and so notified Walderman and that it did not furnish the lumber until it had received Walderman's positive assurance that it would get its money and had ascertained that he was a man of means and that it was thereby induced to take the risk of furnishing the lumber we think that the case should have gone to the jury to determine from all the evidence to whom the credit for the lumber was given. We will therefore reverse the judgment appealed from and send the case back for a new trial.

> *Judgment reversed with costs and case*
> *remanded for a new trial.*

(Decided December 1st, 1904.)