KERNER *v.* EASTERN DISPENSARY AND
CASUALTY HOSPITAL

[No. 27, September Term, 1957.]

376

*Decided October 22, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*William A. Volkman, Jr.,* and *Dean Hill Stanley,* for appellant.

*Vivian V. Simpson,* with whom were *Simpson & Simpson* and *Joseph B. Simpson, Jr.,* and *Alan Johnstone,* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

This case was before this Court for the first time in June of 1956, *Kerner v. Eastern Hospital,* 210 Md. 375, 123 A. 2d 333. Eastern Dispensary and Casualty Hospital (hereinafter called "Eastern"), a corporation, brought suit against Henry P. Kerner to recover for hospital care and treatment of his estranged wife, from January 17, 1952, until June 30, 1955. Eastern filed its claim for $12,010.30, less a credit of $4,500 received from the proceeds of a sale of Mrs. Kerner's home, leaving a balance due of $7,510.30. The suit was based upon an alleged promise by Kerner to pay for the future care and treatment of his wife by the hospital, and a claim that the care and treatment of Mrs. Kerner were necessaries for which her husband was liable.

Eastern filed a motion for a summary judgment, which was supported by an affidavit. Kerner filed the general issue pleas, a special plea, and an affidavit opposing the entry of such a judgment. In his special plea and his affidavit, Kerner claimed as one of his defenses that his wife, for many years, had been living separate and apart from him, without just cause or reason, and, under such circumstances, he was not responsible for her necessaries. He also denied that he had ever promised to make any payment to the plaintiff of any kind. The details of these pleadings are set forth in the citation named above.

The trial court summarily entered judgment in favor of Eastern against Kerner, apparently on the theory that he was liable for his wife's necessaries. This Court, upon appeal, held that Kerner's pleas and affidavit had raised a dispute of

a material fact (whether his wife had deserted him without just cause), reversed the judgment, and remanded the case for further proceedings. When the case came on for trial, it was submitted to the court, without a jury, and the court found a verdict in favor of Eastern. Judgment was duly entered upon the verdict, and it is from this judgment that Kerner has appealed.

At the beginning of the trial below, the appellee abandoned any effort to establish liability on the part of the appellant on the theory that a husband is responsible for his wife's necessaries; and rested its case upon an alleged express promise by the appellant to pay for the care and treatment of Mrs. Kerner. The undisputed facts show that at the time of her admission to the hospital on January 17, 1952, Mrs. Kerner was a very ill woman. She was received as an emergency patient, and unable to talk. She was suffering from serious ailments, and remained so confused, during her entire stay at the hospital until June 30, 1955, that she was unable to carry on a coherent conversation. The charges for her care and treatment were billed in her name. As Mrs. Kerner could not furnish the hospital with any information concerning her finances, its officials began to inquire concerning the same, and as to any possible relatives, who might be responsible for her care. The matter was referred to the hospital's attorney, Mr. Alan Johnstone. Sometime before June 24, 1952, it was discovered that Mrs. Kerner owned a. dwelling in the District of Columbia, and that she had a husband, the appellant in this case. Later developments showed that Mr. and Mrs. Kerner had not lived together for many years. As of June 24, 1952, the hospital's bill against Mrs. Kerner was approximately $1200. The reasonableness of the overall charges was not conceded at the trial, but no testimony was offered by the appellant concerning the same, and the question is not raised in this appeal, so no further reference thereto need be made.

This brings us to the disputed testimony, which is the crux of the case. Mr. Alan Johnstone, Eastern's attorney, testified that he was sixty-five years of age and had been in the practice of the law since 1912; that after the matter of the indebtedness for Mrs. Kerner's care and treatment was turned

over to him, he learned that she had a husband and where the husband lived; that he, the witness, went to Mr. Kerner's residence and talked with him concerning his wife's condition; that the witness informed Kerner that Mrs. Kerner was in "a rather helpless condition, not able to take care of herself" and the witness could obtain little information concerning her. Mr. Johnstone further testified that Mr. Kerner told him that he was married to Mrs. Kerner; that he, Kerner, readily admitted his responsibility for her care; and that Kerner said: "He would take care of her bills * * * he would pay the bill". Johnstone stated that Kerner said, however, that Mrs. Kerner had some separate property and "he thought that should be applied to her bills". Johnstone told Kerner that that was a matter between him and Mrs. Kerner, and that he, Johnstone, represented the hospital. Johnstone then said he reported this conversation to Eastern and advised it to keep Mrs. Kerner, which it did.

The appellant employed Mr. John Lahey, a member of the bar, to institute proceedings to have a conservator appointed for Mrs. Kerner's property. Mr. Lahey was called as a witness for the appellee and testified that he had had a conversation with Mr. Kerner; and while he could not remember the exact words used between them, he recalled the general tenor or substance thereof, which was to the effect that Mr. Kerner was to pay Mrs. Kerner's expenses, but he was interested in having the proceeds of her property pay a portion of the same.

The appellee also introduced a deposition of Harry F. Allmond, a man eighty-eight years of age, who was the secretary of the Board of Directors of the appellee. Mr. Allmond was present at the time of the conversation between Johnstone and Kerner on June 24, 1952. Perhaps due to his age, his testimony was not so clear, direct, and consistent as is desirable, but it, too, corroborated that of Mr. Johnstone.

The appellant was his only witness concerning the conversations, and he flatly denied that he had ever promised to pay for the care and treatment of his wife.

The trial Judge held that the appellee had met the burden of proof, that Kerner had promised to pay for Mrs. Kerner's hospitalization, and the appellee was entitled to judgment.

Upon this statement of facts, the appellant requests us to rule, (1), that the appellee failed to sustain, by a preponderance of evidence, the burden of proving that the appellant promised to pay for Mrs. Kerner's care, and, (2), if appellant made the promise, it was collateral (being a promise to answer for the debt, default or miscarriages of another person), and within the Statute of Frauds and unenforceable because it was not in writing.

I

Little need be said concerning the first point raised by the appellant. A reputable member of the bar, of many years standing, testified directly and specifically to a promise made by the appellant, and he was corroborated by two other witnesses. The only denial thereof was by the appellant, a party to the litigation. The trial Judge had an opportunity to see and hear the witnesses (except the witness, Allmond), and to evaluate their testimony. He concluded that the promise had been made. In this situation, we find no basis to hold that his finding was "clearly erroneous" (Maryland Rule 886), because we think it was correct.

II

For the purposes of the second question raised by the appellant, we shall assume, without deciding, that the point was properly reserved for our consideration. Under this heading, the appellant contends (a) that there was no consideration for the promise, and (b) the promise, if made, was a collateral one and within the Statute of Frauds; and the appellee asserts that it was an original promise and not within the Statute.

(a)

The consideration, obviously, was the continued care and treatment of Mrs. Kerner after June 24, 1952. This was a valid and valuable consideration. A contract is not brought within the Statute of Frauds merely because someone other than the promisor received the benefit of the consideration. 2 *Williston on Contracts,* (Rev. Ed.), sec. 464.

(b)

One clause of the fourth section of the Statute of Frauds

provides that no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriages of another person unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized. This English statute has been in force in Maryland since colonial days, without legislative enactment. 2 *Alex. British Statutes,* 690.

The words "collateral" and "original" lend little aid in determining whether an agreement is within or without the purview of the Statute. These terms are not used or defined in the Statute itself, but have become technical terms, whereby to distinguish promises that are within, and such as are not within the Statute. They are descriptive of a result arrived at on grounds practically independent of the terms themselves. They seem to be restricted so as to mean by "original" that the promise is for any reason not within the guaranty clause of the Statute, and by "collateral" that it is within that clause. 2 *Williston, op. cit. supra,* sec. 463; 2 *Corbin on Contracts,* sec. 348.

This being so, in order to determine whether a promise is collateral or original, resort must be had to the general distinguishing characteristics of collateral and original promises, as understood in relation to the Statute of Frauds. This Court has had occasion to point out these characteristics under varying circumstances. There is no necessity here to refer to all of the previous decisions. In *Elder v. Warfield,* 7 Har. & J. 391, 396, 397, Judge Buchanan, for this Court, said:

> "The general rule being, that wherever the party undertaken for, is *originally* liable upon the same contract, the promise to answer for *that liability* is a collateral promise, and must be in writing. As if B gives *credit* to C for goods sold and delivered to him, on the promise of A to see him paid, or to pay him for them if C should not, in that case it is the *immediate debt* of C for which an action will lie against him, and the promise of A is a collateral

undertaking to pay that debt, he being only as a security.

But where the party undertaken for is under no *original* liability, the promise is an original undertaking, and binding upon the party promising, without being in writing. Thus, if B furnishes goods to C on the *express promise* of A to pay for them, as if A says to him, let C have goods to such an amount, and I will pay you, and the *credit is given* to A, in that case C being under no liability, there is nothing to which the promise of A can be collateral; but A being the *immediate debtor,* it is his original undertaking, and not a promise to answer for the debt of another." (Italics partly supplied).

See also *Ellicott v. Peterson,* 4 Md. 476, 492; *Nor. Cent. R'y Co. v. Prentiss,* 11 Md. 119, 127; *Myer v. Grafflin,* 31 Md. 350, 355; *Norris v. Graham,* 33 Md. 56, 58; *Lumber Co. v. Israel Congregation,* 100 Md. 125, 127, 59 A. 180. Cf. *Dryden v. Barnes,* 101 Md. 346, 350, 351, 61 A. 342. A reading of these decisions discloses that the real test to be applied and the true point of inquiry in ascertaining whether the undertaking of the defendant, in a case like the present one, was collateral or original is *to whom was the credit given* at the time the services were rendered. If the credit for her future care and treatment after June 24, 1952, were given to Mrs. Kerner, and Mr. Kerner promised to pay for what she was responsible, the promise was collateral and within the Statute.; but if the credit were extended solely to Mr. Kerner, the promise was original and the bill was his immediate debt, for which he is responsible, notwithstanding the promise was not in writing.

To whom the credit was given is a mixed question of law and fact, but in most cases the facts that determine the existence or non-existence of a duty in a third person to pay for services rendered to another are sufficiently in doubt to make the issue a question for the jury. Among the many Maryland cases so holding, see *Cropper v. Pittman,* 13 Md. 190, 195; *Realty Corp. v. Weinstein,* 177 Md. 260, 263, 9 A. 2d 602.

See also Anno: 20 *A. L. R.* 2d 251, 252, 263. The trial Judge, after due consideration of the wording of the promise, the predicament of the parties, and all the surrounding circumstances,[1] determined that the credit for Mrs. Kerner's care and treatment after June 24, 1952, was extended *solely* to Mr. Kerner, although her separate estate paid a portion of the bill, a matter in which the hospital refused to participate other than to accept the money when tendered. In reviewing this conclusion of the trial Judge, we are unable to say that he was "clearly erroneous". Maryland Rule 886. It is true that the services were charged in Mrs. Kerner's name, but she had been in the hospital for several months before Mr. Kerner was located. At most, this is an evidential fact against the plaintiff, but is far from conclusive. *Elder v. Warfield, supra,* at page 399; *Myer v. Grafflin, supra,* page 357; *Realty Corp. v. Weinstein, supra,* p. 264; 2 *Corbin, op. cit., supra,* sec. 353.

The appellant, in his brief, cites several Maryland cases, some of which have been named above. A careful reading of all of them fails to disclose anything that conflicts with what has been said in this opinion.

*Judgment affirmed, with costs.*

---

1. *Elder v. Warfield, supra,* at page 398.