# Day *v.* Adcock.

### *Assumpsit.*

(Decided November 12, 1914. 66 South. 911.)

1. *Frauds; Statute; Original Promise; Collateral Undertaking.*— Where the action is brought against one for the value of goods delivered to another, and the defense is the statute of frauds, the decisive question is to whom was the credit given, and if it appears that the credit was given solely to defendant (the goods sold to him though delivered to another) the statute does not apply.

2. *Same; Jury Question.*—Under the evidence in this case whether the goods were delivered solely on defendant's promise to pay therefor, and whether defendant's promise was limited in amount, was a question for the jury.

3. *Same; Form.*—The fact that the promise was in form "I will see it paid," does not necessarily import a collateral promise as distinguished from an original one.

4. *Trial; Question for Court or Jury.*—Where different inferences may be drawn from the facts and circumstances, though they are not in dispute, or when any material fact rests in inference, or it becomes necessary to determine the intention of the party, the question is one for the jury and not for the court.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Assumpsit by Luther Adcock against D. W. Day. Judgment for plaintiff and defendant appeals. Affirmed.

TIDWELL & SAMPLE, for appellant. Refusal of the court to give the several affirmative charges requested by appellant was error.—*Webb v. Hawkins L. Co.,* 101 Ala. 630; *Fuller v. Gray,* 116 Ala. 238; *Cameron v. Haas Bros. P. Co.,* 57 South. 388; subd. 3, sec. 4289, Code 1907. On these authorities it is insisted that the other rulings of the court complained of were error.

KYLE & HUTSON, for appellee. The questions presented were for the jury and not for the court, and hence, there was no error in declining to give the affirmative charge.—*Bates v. Hart,* 124 Ala. 427; *Bomar v. Rosser,* 123 Ala. 641. The charge given for plaintiff was free from error.—*Clark v. Jones Bros.,* 87 Ala. 481; *Stein v. Sanders,* 116 Ala. 156.

THOMAS, J.—"When * * * an action is brought against one, charging him with the value of goods delivered to another, and on his promise to pay, and it is set up in defense that the promise was to pay the debt of another, and was not in writing, the decisive question is: To whom was the credit gvien? If the credit was given solely to the defendant (that is, if the goods were really sold to him, though delivered to another), the statute is then out of the case. But, if the whole credit was not given to the defendant (that is to say, if any credit at all was given to the party receiving the goods), the promise of the defendant is collateral and within the statute. For in that case the plaintiff would have a remedy against the party receiving the goods; and all the cases show that it does not matter upon which of the two parties the plaintiff principally depends for payment, so long as the person for whose use the goods are furnished is at all liable to him."—*Boykin & McRae v. Dohlonde & Co.,* 37 Ala. 577; *Webb v. Hawkins Lumber Co.,* 101 Ala.

633, 14 South. 407; *Strouse v. Elting,* 110 Ala. 139, 20 South. 123; *Fuller v. Gray,* 116 Ala. 238, 22 South. 576; *Fuller v. Gray,* 124 Ala. 389, 27 South. 458; *Cameron v. Haas Bros.,* 3 Ala. App. 520, 57 South. 388; *Pake v. Wilson,* 127 Ala. 241, 28 South. 665; *Smith Bros. & Co. v. Miller,* 152 Ala. 485, 44 South. 399; *Clark v. Jones & Bro.,* 87 Ala. 475, 6 South. 362; *Stein v. Sanders,* 116 Ala. 156, 22 South. 498.

The evidence, in the instant case, bearing on the subject mentioned, consisted solely of the testimony of plaintiff and defendant, each of whom testified as a witness for himself respectively. From the plaintiff's testimony we extract the following as comprising substantially what he swore on the point under consideration:

"The defendant arranged with me to furnish Mr. J. King and Mr. J. S. Terrell in the year 1911. These two parties were tenants of defendant for that year. Dr. Day [the defendant] came into my store with these two men and said: "You furnish my men, King and Terrell, what they want, like you have done heretofore for other men living on my place, and I will see it paid.' * * * I never sold goods to King or Terrell individually. * * * I had been furnishing some tenants of defendant, prior to this time, under an agreement that I would charge him cash prices for the goods, plus 10 per cent. I furnished defendant's tenants this way because I knew Dr. Day [the defendant] was good. * * * I had two accounts charged on my ledger [for the goods furnished King and Terrell]. One was charged to 'Mr. J. King—D. W. Day, Security,' and the other was charged to 'Mr. J. S. Terrell—D. W. Day, Security.' The accounts were kept this way so that I would know what each party got on final settlement with defendant. The credit was extended solely to defendant, and no credit was extended to King or Terrell. These men were rank

strangers to me, and I knew nothing about them, and I did not consider them in extending the credit. Never talked with King or Terrell about furnishing them; that trade was made with Dr. Day. There was no written agreement or order of any kind between myself and Dr. Day about furnishing King and Terrell."

The defendant, Day, testified, so far as is material here, as follows:

"Mr. J. King and Mr. J. S. Terrell rented land from me in the early part of the year 1911. Some time along in February or March I went with these men to plain-itff's store and told him to let them have what they wanted or might need out of the store, up to $75 or $100 each, and that I would see that he got his money, and he said that he would. I never contracted or agreed to pay for the goods furnished these men by plaintiff, but sim-ply told him I would see that they paid for what he would let them have up to the sum mentioned. I have frequently before this time made similar arrangements with plaintiff, and I always put a limit on the amount. In the fall of the year as these men disposed of their crops, I would go with them to plaintiff's store and see that they made payments on their accounts. The plain-tiff sold these men and other men on my place and charged it to them at regular cash price to customers, plus 10 per cent. He sold in this way because I would agree to see that these tenants of mine paid their ac-counts up to the agreed limit."

The question of whether defendant put a limit on the amount to be furnished was in serious dispute, and no review of the jury's finding is sought on that question, which, as seen, goes only to the amount and extent of defendant's liability, if liable at all, and not to his lia-bility vel non. The affirmative charge, which was re-fused, was requested by defendant solely on the theory

that the testimony which we have set out, and which was all the testimony on that subject, was without conflict and showed without dispute, it is claimed, that the contract on which defendant is sought to be held was void as in contravention of the statute of frauds.—Code, § 4289, subd. 3.

In answer to this contention, we cannot do better than quote what was said by our Supreme Court in the case of *Boykin v. Dohlonde, supra,* with respect to a state of facts very similar to those here:

"Whether a contract is collateral or original may be a question of construction, as in *Scott v. Myatt,* 24 Ala. 489 (60 Am. Dec. 485), and then it is [a question] for the court. But, in cases like the present, the question to whom credit is given is one of fact to be determined by the jury. * * * The entry in the books of the seller is often of great importance in determining to whom credit was given. Being made by the seller, it is, of course, of much greater weight, when against him, than when it sustains his claim. If, on production of the plaintiff's books, it appears that the defendant was not originally debited there, but that the goods were charged against the person receiving them, this fact, if unexplained by other circumstances, would be very strong, if not conclusive evidence, that credit was given to the person receiving the goods. But, as the question to whom credit was given must depend upon the intention of the parties, the fact that the goods were charged to the person receiving them is not conclusive, but may be explained and made consistent with the assumption of the defendant's primary liability. Other circumstances in the case may show * * * that the account was so kept for convenience and to avoid confusion and misunderstanding, and that in point of fact the credit was given to the defendant. * * * On the other hand, *if*

the defendant has been treated by the person selling the goods, and has himself acted as if he were the sole party liable, that, if not explained by other evidence, would be a circumstance conducing to show that his promise was not collateral. But it is impossible to specify any one fact, or set of facts, on which the question, to whom plaintiff gave credit, is to be determined; and the weight to which any particular fact may be entitled must vary with the varying circumstances with which it may be found connected. Consequently, when there is any conflict of evidence upon the subject, the weight to be given to any particular circumstance should be left to the jury, who, in deciding the question to whom the credit was given, should take into consideration * * * the expressions used, the situation of the parties, and all the circumstances of the case."—*Boykin v. Dohlonde & Co., supra,* and other authorities supra.

And we may add that, even where there is no conflict of evidence upon the subject (that is, where the facts and circumstances proved are not in dispute), yet, if they are such as to permit the drawing of different inferences from them, it is for the jury to say which of the inferences shall be drawn.—*Bates v. Harte,* 124 Ala 427, 26 South. 898, 82 Am. St. Rep. 186; *Bomar v. Rosser,* 123 Ala. 641, 26 South. 510; *Rufford v. Raney,* 122 Ala. 565, 26 South. 120; *Cole v. Propst,* 119 Ala. 99, 24 South. 884; *Baker v. Troy Compress Co.,* 114 Ala. 415, 21 South. 296; 2 Mayf. Dig. 561, 562.

The general charge should never be given when any material fact in the case rests in inference, or when, in the case, it becomes necessary to determine the intention of the parties.—*Cox v. Knight,* 49 Ala. 173; *Swanner v. Swanner,* 50 Ala. 67; *Tabler v. Sheffield Land Iron Co.,* 87 Ala. 309, 6 South. 196; *Henry v. McNamara,* 114 Ala. 114, 22 South. 428.

The form of defendant's promise, "I will see it paid," as testified to by plaintiff' does not necessarily import a collateral promise; that is, a promise to pay only in the event the third parties who received the goods failed to pay.—*East Baltimore Lumber Co. v. Israel Congregation,* 100 Md. 125, 59 Atl. 180; Browne on Statute of Frauds, § 198; and other authorities hereinbefore cited.

The case of *Fuller v. Gray,* 116 Ala. 238, 22 South. 576, where a similar charge was condemned, is to be dif- ferentiated from the case here in that in this case the defendant admitted that he made the request, testified to by plaintiff, to let the parties named have the goods, while in that case the defendant denied making any such request or arrangement. What we have already said sufficiently indicates, without the necessity of further discussion, that we are not of opinion that we should disturb the action of the lower court in overruling the defendant's motion for a new trial.—*Cobb v. Malone,* 92 Ala. 630, 9 South. 738.

It follows that the judgment appealed from is af- firmed.

Affirmed.