58 So.2d 617

## LEVY v. ALLEN.

### 3 Div. 587.

Supreme Court of Alabama.

Oct. 11, 1951.

Rehearing Denied May 15, 1952.

McMillan, Caffey & McMillan, Brewton, for appellee.

Brooks & Garrett, Brewton, for appellant.

LIVINGSTON, Chief Justice.

The appeal is from a decree overruling demurrers to a bill of complaint seeking a discovery by interrogatories attached to and made a part of the bill; an accounting, and a judgment for the amount found due complainant by respondent. We will refer to the parties as complainant and respondent, their respective positions in the court below.

In pertinent part the bill of complaint alleges:

"That heretofore on, to-wit, the 7th day of September, 1944, the complain-

ant who had been a partner with the wife of Lawrence L. Levy in a mercantile business in the City of Brewton, Escambia County, Alabama, known as Two Sisters Fashion Shop, agreed with the defendant Horace Levy and the said Lawrence L. Levy to sell out his interest in said mercantile business to the said Lawrence L. Levy for an agreed cash consideration provided the said Lawrence L. Levy would employ the complainant as his purchasing agent for said mercantile establishment for a period of two years from September 1, 1944, and pay to the complainant as compensation for acting as such purchasing agent ten per cent of the invoice price of all merchandise purchased for sale in said store, whether purchased through the complainant or from other sources, and would in addition pay to the complainant the sum of Five hundred dollars ($500.00) per year as expense money for making trips to market, and provided the defendant Horace Levy would guarantee the faithful performance of said contract on the part of Lawrence L. Levy. Said contract with reference to the commissions and expenses was reduced to writing and signed by the complainant and Lawrence L. Levy, and a copy thereof is hereto attached as Exhibit 'A' and prayed to be made a part hereof.

"That the defendant Horace Levy is a brother of the said Lawrence L. Levy and was financially interested in the business to be conducted by the said Lawrence L. Levy, either as a silent partner or as a creditor, but the exact nature of said interest is to the complainant unknown. The said defendant Horace Levy, however, was present at all conferences and negotiations in regard to the aforesaid sale of the complainant's interest in said business to the said Lawrence L. Levy, and he in fact negotiated the sale of said partnership interest and paid to the complainant the amount of money agreed upon as the purchase price of said business, said payment having been made by the personal check of the defendant Horace Levy. As a part of said negotiations, it was agreed by and between the said complainant and the defendant Horace Levy that the said Horace Levy would guarantee the full performance on the part of the said Lawrence L. Levy of the aforesaid written contract, copy of which is attached as Exhibit 'A' to this bill of complaint, and it was upon this understanding and agreement that the complainant agreed with defendant Horace Levy to sell out his interest in the aforesaid business so that it should thereafter be conducted in the name of Lawrence L. Levy. Your complainant avers that although the written contract was not signed by the defendant Horace Levy, he was present when same was signed and made some changes in his own handwriting in the contract as originally drafted, and the said Horace Levy on the day that said contract was in fact signed, namely, September 8, 1944, and in attempted compliance with his prior oral agreement so to do, did give to the complainant a separate letter of guarantee, a copy of which is hereto attached as Exhibit 'B' and prayed to be made a part hereof. The complainant avers that he did not carefully read said letter at the time same was given to him but assumed that it was the guarantee that Mr. Horace Levy had agreed on, namely, a guarantee that the said Lawrence L. Levy would faithfully perform his agreement and make all payments to the complainant which he had agreed to make in said contract; that upon returning to his home and on the following day the complainant observed that said letter was not a full guarantee of performance on the part of Lawrence L. Levy as was agreed between them and wrote the defendant Horace Levy that in order for him to feel safe and secure it would be necessary for defendant Horace Levy to write the letter which he had promised him, namely, that he would guarantee that the contract which Lawrence

L. Levy signed would be carried out, and the complainant would not have sold out his interest nor undertaken to act as purchasing agent for the said Lawrence L. Levy without such written guarantee from the defendant Horace Levy. That on September 12th, 1944, the said Horace Levy replied to said letter and wrote the complainant a letter which he stated might be used as such guarantee, a copy of which is hereto attached as Exhibit 'C' and prayed to be made a part hereof.

"The complainant avers that immediately upon receipt of letter from the defendant Horace Levy hereto attached as Exhibit 'C' guaranteeing performance on the part of Lawrence L. Levy of the contract attached as Exhibit 'A' to this bill of complaint, he proceeded to purchase merchandise for the business of the said Lawrence L. Levy, the defendant Horace Levy advancing the sum of, to-wit, $4,000.-00 from his personal funds for this purpose, and the purchases during the months of September, October and November, 1944, made by complainant for said store amounted to a total of, to-wit, $19,022.61, but no purchases were made by complainant for the said Lawrence L. Levy after November, 1944, and no request on his behalf was made for the purchase of any merchandise, and thereafter and on, to-wit, February 12, 1945 the defendant Horace Levy repudiated his written guarantee, writing to the complainant that this matter was entirely up to the complainant and Lawrence L. Levy. The complainant avers that he was at all times, ready, willing and able to comply with his contract and make such purchases, and stood ready to make such purchases as were requested by the said Lawrence L. Levy but no further request for purchases was made, and the said Lawrence L. Levy purchased all merchandise for his said store from other sources. The complainant does not know and has no means of knowing how much was purchased from others by the said Lawrence L. Levy

from the date of said contract to the date of its expiration, namely, September 1st, 1946. He avers that he was never supplied with any invoices covering said shipments made to the said Lawrence L. Levy by others, and although he made frequent demands on said Lawrence L. Levy to be supplied with this information the said Lawrence L. Levy refused to give him the necessary information and refused to make any payment on account of commissions or traveling expenses. The complainant avers that a large amount of merchandise was in fact purchased by Lawrence L. Levy during said two year contract, and that the books which would disclose such purchases are now in the hands of the defendant Horace Levy, but the said Horace Levy declines to furnish this complainant with any information in regard to said purchases and denies all liability under his written indemnity agreement."

Exhibits "A", "B" and "C" attached to and made a part of the bill are as follows:

"Exhibit 'A'.

"State of Alabama }
Escambia County }

"This Agreement made and entered into this 7th day of September, 1944, by and between Lawrence L. Levy of Brewton, Alabama, Party of the First Part, and I. N. Allen of Haines City, Florida, Party of the Second Part. Witnesseth:

"The Party of the First Part who owns and operates a mercantile establishment in the City of Brewton, Alabama dealing in ladies ready-to-wear and notions and general merchandise agrees to employ the Party of the Second Part as purchasing agent for said mercantile establishment for a period of two years from September 1, 1944, and the Party of the Second Part agrees to act as such purchasing agent.

"All merchandise for said store is to be purchased through the Party of the Second Part, he to furnish such merchandise for said store as shall be considered readily salable and to keep.

same stocked with such merchandise from such orders as he may obtain or may in his best judgment think necessary. The Party of the Second Part shall submit invoices as to the cost of said merchandise and as compensation therefor is to receive ten per cent (10%) of the invoice price, payment of said ten per cent commission to be made within thirty days from the time invoices are presented. In addition the Party of the First Part shall pay to the Party of the Second Part the sum of Five Hundred Dollars ($500.-00) per year as expense money for making trips to market, said payments to be made in equal monthly installments.

"It is understood and agreed that the said Party of the Second Part is to receive Ten per cent (10%) of the invoice price of all merchandise sold in said store whether same shall be furnished by him or by others, and he shall have access at all times to the books of the business which refer to inventory and purchases in order to obtain the amount of compensation due him. No goods ordered or sent to the Party of the First Part are to be returned to the Party of the Second Part without the written consent of the Party of the Second Part first obtained.

"The Party of the First Part is at all times to maintain a bank account in the name of the Party of the Second Part in an amount not less than Two Thousand Dollars ($2,000.00) for the purpose of paying for the goods so ordered or sent to the Party of the First Part. Upon receiving invoices for goods and advice from the Party of the Second Part that he has checked on said account for the amount of said invoices, the Party of the First Part is to replenish said fund so that it shall always be in the aforesaid amount of Two Thousand Dollars. The Party of the Second Part is to furnish to the Party of the First Part monthly statements as to the funds deposited and

checked out. No amount shall be drawn by the Party of the Second Part from this fund except for the cost of goods and the monthly commission.

"In Witness Whereof the parties have hereunto set their hands and seals in duplicate on the day and date first above written.

"Lawrence L. Levy
I. N. Allen."

"Exhibit 'B'
Bonita Ribbon Mills, Inc.
Manufacturers of Narrow Ribbons
Brewton, Alabama
Sept. 8, 1944.

"Mr. I. N. Allen,
Haines City, Fla.
"Dear Mr. Allen:—
"This letter will authorize you to ship merchandise to the Two Sisters Fashion Shop, as in the past under my guarantee up to the amount of $3000—This is only until I can meet you in New York about Oct. 15, 1944 and make arrangements to finance under other arrangements.

"Horace Levy."
"Exhibit 'C'
Bonita Ribbon Mills, Inc.
Manufacturers of Narrow Ribbons
Brewton, Alabama
September 12, 1944

"Mr. I. N. Allen
Haines City, Florida
"Dear Mr. Allen:—
"This will acknowledge your letter of Sept. 9th in which you outlined your fears regarding a breach of buying contract for Larry's store during the next two years. I feel that these worries of yours are without foundation but to assure you this letter will serve as a personal guarantee from me to the effect that all goods bought by Larry's store, known as the Two Sisters Fashion Shop, either by you personally or by them direct will give you a buying commission of 10%. I meant that when we agreed to it, I mean it now and I mean it for the entire length of the contract. The buying records of the store will be open for your inspection at any time you

may so desire to look at them. You can use this letter as a guarantee.

"I am enclosing a copy of the statement or settlement we made out when you were here. While I don't understand them too thoroughly I merely wrote down the figures that you gave me and on that basis a settlement was made. I am also asking Larry for a copy of the partnership dissolution which I believe Alice and Pearl were still to sign.

"I trust this finds you well and taking things easier. With my kindest regards,

> "Very sincerely yours,
> Horace Levy
> Horace Levy."

"HL:skn

Respondent's demurrers take the point that the contract sought to be enforced is violative of subdivision (3) of section 3, Title 20, Code 1940, which provides:

"§ 3. Certain contracts to be in writing, else void.—In the following cases, every agreement is void, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party to be charged therewith, or some other person by him thereunto lawfully authorized in writing:

\* \* \* \* \* \*

"(3) Every special promise to answer for the debt, default, or miscarriage of another."

As early as Puckett v. Bates, 4 Ala. 390, this court observed: "The law is certainly well established that if the person for whose debt, default or miscarriage the undertaking is made, be liable at all so that the whole responsibility does not rest upon the second promisor, the second promise is collateral, and is void by the statute if not reduced to writing." The foregoing statement was quoted in Edwards v. Bryan, 214 Ala. 441, 108 So. 9, 52 A.L.R. 784, and has been approved by a number of cases cited therein. It is our judgment that the promise of respondent, Horace Levy, is collateral, and is controlled by the provisions of the above-quoted section of the statute

of frauds; and the further question is, does it comply with the statute.

The contract sought to be enforced by complainant is alleged to be an oral contract made contemporaneously with the original contract between complainant and Lawrence L. Levy.

The object of the statute of frauds is to protect individuals from having parol agreements imposed on them against their consent; but it has been uniformly held not to defeat a parol contract which is afterwards evidenced by a writing signed by the party sought to be charged with it. Norman v. Molett, 8 Ala. 546; Jenkins v. Harrison, 66 Ala. 345; 12 R.C.L., § 29, p. 1077. It was said in Jenkins v. Harrison, supra:

"The purpose and object of the statute being no more than the requisition of written evidence of the substance of the contract, signed by the party to be charged, so that he may not be subjected to the mischief which could follow from mere oral evidence; the purpose and object, and the words of the statute, are all satisfied, 'whenever there exists, under the hand of the party sought to be charged, a written statement, containing, either expressly, or by necessary inference, all the terms of the agreement—that is to say, the names of the parties, the subject-matter of the contract, the consideration, and the promise, and leaving nothing open to future treaty. This, therefore, is sufficient to satisfy the statute; and provided this be found, no formality is required; nor does it signify at all what is the nature or character of the document containing such written statement—whether it be a letter written by the party to be charged to the person with whom he contracted, or to any other person, or a deed, or other legal instrument, or an answer to a bill, or an affidavit in chancery, in bankruptcy, or in lunacy.' Fry on Specific Perf. § 344.

\* \* \* \* \* \*

"After a contract has passed beyond negotiation or treaty—after the minds of the parties have met—after there has

332

been reciprocal assent to all its terms—unless all the negotiations have been conducted in writing, there is, of necessity, a period of time, longer or shorter, when it rests wholly in parol—the period intervening between the conclusion of treaty, the mutual assent of the parties, and the reduction of the terms of the contract to writing. The writing is not the contract—it is no more or less than the evidence of it, which must exist, or the contract is without legal validity or efficiency, and this evidence may be supplied at any time after the contract is completed. Lerned v. Wannemacher, 9 Allen, Mass., 412; Marsh v. Hyde, 3 Gray, Mass., 331; Williams v. Bacon, 2 Gray, Mass., 387. This, in effect, was the decision of this court in Norman v. Molett, 8 Ala. 546, where a purchaser of lands was held bound by a contract of sale signed only by the vendor, but which the purchaser subsequently, by indorsement, transferred to another."

See also Sadler v. Ratcliff, 215 Ala. 499, 111 So. 231.

We are clear to the conclusion that Exhibit "C" to the bill of complaint satisfies the statute of frauds as to the provision requiring the contract between the parties to be reduced to writing.

Does the writing express a consideration?

It is alleged in the bill, in effect, that the guaranty agreement signed by respondent, Horace Levy, was made contemporaneously with the contract between complainant and Lawrence L. Levy.

It is well settled that if a contract of guaranty is made contemporaneously with the original contract which it guarantees, the consideration for the original contract is sufficient to support the contract of guaranty. Dilworth v. Holmes Furn. & Vehicle Co., 183 Ala. 608, 62 So. 812; Merritt v. Coffin, 152 Ala. 474, 44 So. 622. Even so, the contract of guaranty must express the consideration, or rather a valuable consideration, in writing.

The guaranty contract here under consideration, signed by respondent, Hor-

ace Levy, specifically refers to the contract which it guarantees, i. e., the contract between complainant and Lawrence L. Levy. Indeed, it recites the consideration of the latter. Furthermore it shows that the two contracts were made contemporaneously. In such a case the consideration for the contract guaranteed is sufficient to support the contract of guaranty. Authorities, supra; Strouse v. Elting, 110 Ala. 132, 20 So. 123, 10 Ala.Dig., Frauds, Statute of ⚭33, et seq., page 534.

The trial court did not err in overruling the demurrers to the bill.

Affirmed.

FOSTER, LAWSON and SIMPSON, JJ., concur.