157 So.2d 661

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA**

**v.**

George DEVINE.

8 Div. 43.

Supreme Court of Alabama.

July 25, 1963.

Rehearing Denied Nov. 14, 1963.

London, Yancey, Clark & Allen, Birmingham, for appellant.

Albert P. Brewer, Decatur, for appellee.

COLEMAN, Justice.

This is an appeal by defendant from a judgment for plaintiff, rendered on the verdict of a jury, in an action against defendant as surety on a contractor's bond required by § 16, Title 50, Code 1940, with the obligation that the contractor should promptly make payment to all persons supplying him with labor and materials for the prosecution of the work provided for in a contract for construction of an elementary school building in Decatur.

The complaint contains one count. Plaintiff alleges that on August 15, 1958, F. W. Bruce Construction Company, hereinafter sometimes referred to as the contractor or as Bruce, and the Decatur City Board of Education, hereinafter sometimes referred to as the owner, entered into the contract; that on the date of said contract, the contractor furnished to the owner a labor and materials bond which was in writing, a copy of which is attached to the complaint as Exhibit A; that the contractor is the principal in said bond and defendant is surety; that the bond is conditioned for payment by the principal, and any subcontractors, to all persons supplying him or them with labor and materials for the prosecution of the work provided for in the contract; that plaintiff furnished labor and materials for said work under a contract between contractor and plaintiff; that the contractor abandoned its work under the contract on, to wit, February 10, 1959; that on April 13, 1959, plaintiff gave notice by certified mail to defendant at its principal place of business in Pennsylvania; that said notice was in writing and was given to defendant more than forty-five days prior to filing suit; that defendant has failed and refused to pay plaintiff's claim; and that abandonment of the contract by Bruce occurred within one year immediately preceding the filing of this suit. Plaintiff claims also a reasonable attorney's fee.

Defendant's demurrer to the complaint was overruled and defendant filed pleas 1 through 14, and later, plea 15. The court sustained plaintiff's demurrer to plea 4 and to pleas 9 through 14. The court overruled plaintiff's demurrer to pleas 1, 2, 3, 5 through 8, and 15, which are the general issue and statute of frauds.

Apparently plaintiff joined issue on the pleas to which his demurrer was overruled and trial was begun. After part of the evidence had been heard, plaintiff filed replications 1, 2, 3, and 4. In replication 1, plaintiff joins issue on the pleas. In replications 2, 3, and 4, plaintiff says that defendant is estopped to assert the invalidity of

the bond sued on. The court sustained defendant's demurrer to replications 2, 3, and 4, and the trial continued to verdict and judgment for plaintiff for $3,008.37. From that judgment defendant prosecutes this appeal.

The evidence tends to show that the owner employed an architect to prepare plans for and assist in the construction of the school building; that bids were advertised for; that Bruce filed a bid and a "bid bond" which purported to have been executed by defendant; that Bruce was low bidder and the contract was awarded to Bruce; that copies of the contract, the performance bond, and the labor and materials bond were delivered to the architect's office; that when the bonds were delivered to the architect, they bore these signatures, to wit: that of F. W. Bruce, who was the contractor; of James Atkinson, the alleged attorney in fact and agent of defendant; and of John B. Boswell. The evidence further tends to show that the signature of Rex Rankin, which later appears on the bond, was not there when the bond was delivered to the architect; that on August 15, 1958, the architect took the documents to Decatur and to the office of Rankin in that city; that Rankin signed the bond sued on as "Resident Agent"; that the architect subsequently left the bonds and other papers with the superintendent of education who was the owner's executive officer.

It further appears that John B. Boswell, of Montgomery, went into the bond business in 1956, in his own agency; that in December, 1957, or in January, 1958, Boswell formed a connection with the Churchill Marks Agency in Montgomery; that in this association, Boswell handled the bond business of the agency; that prior to and during the time Boswell was with Marks, Boswell became acquainted with A. F. Irby and Company, an agency in Atlanta, Georgia; that, when Boswell had his own agency, he represented Irby in Montgomery; that Irby is a large general agency and was a "go-between or intermediary" between local agencies and insurance companies; that defendant was one of the companies represented by Irby; that, in 1958, James Atkinson was in charge of Irby's bond department; that Boswell dealt with Atkinson in Irby's bond department; that Boswell placed business, through Irby, with defendant and the Massachusetts Bonding Company; that Boswell and Marks dissolved their association in the latter part of July, 1958; that Boswell left the Marks Agency, went into another office, and reopened his own agency; that Boswell continued to have dealings with Atkinson and others in the Irby Agency in 1958; that Boswell wrote bonds for Bruce from time to time in 1958; that Boswell made bonds for Bruce and others on certain jobs other than the instant job; that Boswell had never been a "licensed agent" of defendant and had never had a power of attorney from defendant; that Boswell had a conversation with Bruce relative to executing a bid bond for him on the elementary school job in Decatur, and later Boswell had a conversation with Atkinson about the same bond; that Boswell called Atkinson, by telephone, in Atlanta and requested authority to execute the bid bond; that the call was made approximately thirty days prior to the bid date which was July 24, 1958; that the call was made by Boswell from his office in the Marks Agency office in Montgomery; that Atkinson told Boswell " * * * that it would be perfectly *alright* to issue the bid bond"; that Boswell "executed" the bond and wrote the name "James Atkinson" on the bond, and also wrote "John B. Boswell," on the bond as a witness; that Boswell attached to the bond a facsimile power of attorney from defendant to Atkinson and delivered the instrument to Bruce; that, after July 24, 1958, Boswell learned that Bruce was low bidder on the Decatur school job; that, subsequently, Boswell, who was in Montgomery, talked with Atkinson, who was in Atlanta, on the telephone, and Atkinson authorized Boswell to write Atkinson's name on the labor and materials bond on which this action is founded; that Boswell wrote Atkinson's name on the bond and Boswell signed his own name as a wit-

ness; that Boswell affixed to the bond a facsimile power of attorney from defendant to Atkinson.

The signatures on the labor and materials bond appear in the transcript as follows:

"IN TESTIMONY WHEREOF, the Principal and the Surety have caused these presents to be duly signed and sealed on this the 15th day of August, 19 58.

"Executed in seven (7) counterparts.

"In presence of

"/s/ John B. Boswell

"_____
            (Address)

"F. W. BRUCE CONSTRUCTION COMPANY

"By /s/ F. W. Bruce            (SEAL)

"1851–B Mt. Meigs Rd., Montgomery, Alabama
            (Business Address)

.    .    .    .    .    .    .    .    .    .    .

"Countersigned:
"/s/ Rex Rankin
"(Resident Agent in
    Decatur, Alabama

"Decatur, Alabama
        "(Address)

"AMERICAN CASUALTY COMPANY
            (Surety)

"Reading, Pennsylvania
            (Business Address)

"By /s/ Jas. Atkinson
        "(Affix Corporate Seal)"

Boswell subsequently delivered the bond to the architect's office in Montgomery and the architect agreed to take the bond to Decatur for Rankin's signature. Boswell placed the seal of Massachusetts Bonding Company on the bond. Boswell never had in his possession a seal of defendant.

When Boswell left the Marks Agency, Boswell took with him " * * * the entire bond supplies which included the seal * * *" of Massachusetts Bonding Company and " * * * some Power of Attorney certificates of James Atkinson on the American Casualty Company."

Boswell testified that he had no writing which authorized him to sign Atkinson's name to any bond testified about, and that he, Boswell, had never, at any time, affixed Atkinson's name, as agent of defendant, to any bond in Atkinson's presence.

Rankin testified that he had a telephone conversation with Boswell, in June or July, 1958; that, subsequently, the architect brought the bond to Rankin, on August 15, 1958, and Rankin signed it. Rankin was

not an agent of defendant at that time, but Rankin "had business affiliations with" Irby.

There is in evidence a purported telegram dated August 15, 1958, from Irby to Boswell, which recites as follows:

"AFTER A GREAT DEAL OF CONSIDERATION I HAVE DECIDED THAT WE MUST DECLINE TO DO BUSINESS WITH YOU UNDER ANY CIRCUMSTANCES. THIS DECISION WAS REACHED THIS MORNING AND INFLUENCED BY MANY FACTORS—
    "W. N. IRBY"

There is in evidence, other purported correspondence between Irby and Boswell prior and subsequent to August 15, 1958.

The foregoing statement of the tendencies of the evidence is sufficient for an understanding of defendant's reliance on the statute of frauds as its chief defense. It is clear and undisputed that the purported signature of Atkinson on the bond sued on was placed there by Boswell, while Boswell was

in Montgomery, Alabama, and Atkinson was in Atlanta, Georgia, and that Boswell had no authority in writing whatsoever from either defendant or Atkinson whereby Boswell was authorized to bind defendant in any written instrument.

### Proposition I

Defendant has arranged the argument portion of its brief according to eleven propositions of law. Under each proposition certain assignments of error are referred to by number. For example, under Proposition I, defendant lists the numbers of forty-four assignments. In these assignments, defendant complains of rulings whereby the court, over defendant's objection, admitted in evidence certain testimony and exhibits offered by plaintiff. Assignment 11, which is one of the assignments listed under Proposition I, recites as follows:

"11. The trial court erred in admitting testimony of the witness John Boswell with reference to alleged conversations between him and James Atkinson of the A. F. Irby Company relative to the execution of bid bonds for F. W. Bruce on the elementary school job in Decatur, Alabama, despite objections by the defendant. (Tr. pp. 90 thru 94)"

On Transcript page 91, it is shown that plaintiff asked Boswell if he had any conversation with any representative of defendant or Irby with reference to issuing a bid bond for Bruce on the construction project here involved. Defendant's objection to the question was sustained, whereupon plaintiff asked Boswell whether he had a conversation "with some individual" about the execution of "this bond." Defendant did not object, and Boswell answered "Mr. James Atkinson." There are several other questions and answers on Transcript pages 90 through 94 "with reference to alleged conversations between" Boswell and Atkinson. We find on pages 90 through 94 of the transcript, three rulings sustaining defendant's objection to questions

propounded by plaintiff and five rulings overruling defendant's objection to such questions.

■ Assignment 11 pertains to at least five rulings on admission of evidence over defendant's objection. These rulings are referred to in a combined general way and by reference to the pages of the record where such rulings may be found. Such an assignment is not sufficient to invite review because the assignment does not state concisely the error complained of. Supreme Court Rule 1; Anderson v. Smith, 274 Ala. 302, 148 So.2d 243.

■ Moreover, if Assignment 11 be considered as assigning as error every ruling adverse to defendant which appears on Transcript pages 90 through 94, with reference to conversations between Atkinson and Boswell relative to the execution of the bid bond on the elementary school job in Decatur, then Assignment 11 cannot be sustained unless all the rulings embraced in it are erroneous. Lane v. Housing Authority of City of Elba, 270 Ala. 383, 118 So.2d 725, and authorities there cited.

On page 91, the record recites:

"Q Mr. Boswell, did you call Mr. James Atkinson in Atlanta, Georgia and request of him permission or authority to execute this bid bond?

"A Yes, sir.

"MR. CLARK: We object; that would be leading, suggestive, call for hearsay information and would also be objectionable from the standpoint of the other grounds assigned.

"COURT: The objection came too late. It came after the witness answered."

■ The objection clearly came too late and overruling it was not error. Thus it appears that at least one of the rulings embraced in Assignment 11 is not erroneous and the assignment cannot be sustained.

Assignments 10, 12, 13, 15, 16, 17, 24, 27, 30, 32, 34, 36, 38, 39, 40, 41, 42, 47, 48, 49, 52, and 53 are all listed under Proposition I and all assign as error the court's action in allowing a witness to testify, over defendant's objection, concerning an alleged conversation with an alleged agent or employee of defendant or of Irby. The witness, in a number of the assignments, testified to statements made to the witness by Atkinson, over the telephone, from Atkinson's office in Atlanta.

Defendant argues that testimony to prove the statements made by Atkinson, and the other alleged agents or employees of Irby, was not admissible against defendant because such testimony is hearsay and because it had not been shown that Atkinson, or the other person alleged to have made the statement, was an agent of defendant and acting within the scope of his agency at the time he made the statement.

We are of opinion that the court did not err in overruling the objection to testimony whereby the witness testified that Atkinson made certain statements. This we hold because of the following matters which appear in the transcript.

Plaintiff filed a motion to require defendant to produce such power or powers of attorney from defendant to Atkinson as defendant had in its possession. The court ordered defendant to comply with the motion and defendant produced a power of attorney from defendant to Atkinson. By the instrument, defendant constituted Atkinson

"its true and lawful attorney(s) in-fact to execute, seal and deliver for and on its behalf as surety, any and all bonds and undertakings, recognizances, contracts of indemnity and other writings obligatory in the nature thereof, which are or may be allowed, required or permitted by law, statute, rule, regulation, contract or otherwise. * * *

"and the execution of such instrument(s) in pursuance of these presents, shall be as binding upon the said AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, as fully and amply to all intents and purposes, as if the same had been duly executed and acknowledged by its regularly elected officers at its principal office.

"ALL AUTHORITY HEREBY CONFERRED SHALL EXPIRE AND TERMINATE WITHOUT NOTICE AT MIDNIGHT OF *8-31-59*."

Defendant objected to admitting the instrument in evidence, but defendant agreed that " * * * this was the Power of Attorney in effect at the time of the purported execution of this document." We understand "this document" to be the bond sued on. The power of attorney is dated August 8, 1957, and, by its terms, expired August 31, 1959. As we understand the record, the witness testified that the statements made by Atkinson were made during the period of time between those two dates. There is no evidence that the power of attorney was not in effect throughout the entire interval between those two dates.

■■ There is no proof that the power of attorney was executed by the officers of defendant, but defendant admitted that the instrument was in effect. Certainly, if formal proof of execution had been made, the power of attorney would have been admissible against defendant. We think defendant's admission was as efficacious as such proof and that admission of the power of attorney in evidence was not error. With the power of attorney in evidence, there was proof that Atkinson was defendant's agent with real power to execute bonds binding on defendant. We are of opinion that the court did not err in overruling objections to testimony, by the witness Boswell, to the effect that Atkinson made those statements which related to the exercise of the power conferred on him, to wit, to execute bonds which were binding on defendant.

We do not say that Atkinson was empowered to do all the things he allegedly did, but

we do say that his agency was shown by evidence other than his alleged statements, and that proof of his statements made in the exercise of his authority as defendant's agent was admissible over the objection now relied on by defendant, namely, that Atkinson's agency had not been otherwise shown.

It may well be that some of the testimony was not admissible to show that persons other than Atkinson had made statements complained of in the assignments listed under Proposition I. Defendant, however, in argument, has not separated the good from the bad testimony but has argued all of it together. Some of it relating to Atkinson's statements we think, was not bad, and argument against the whole is not due to be sustained. Defendant has not shown reversible error under Proposition I.

### Proposition II

Defendant argues, under this proposition, that the court erred in sustaining plaintiff's demurrer to pleas 9, 10, 11, and 12. Defendant's insistence is that, because the bond bears the seal of Massachusetts Bonding Company but purports to be executed by a different company, i. e., the defendant, the bond is defective on its face and the obligee, and through the obligee, the plaintiff, was put on notice of the invalidity of the bond.

In view of our conclusion that the bond is void by virtue of subdivision (3) of § 3, Title 20, Code 1940, we pretermit, as unnecessary, consideration of Proposition II.

### Proposition III

Defendant insists that the bond is invalid because it was not countersigned by a resident agent of defendant in this state, as required by § 823, Title 51, Code 1940. Consideration of Proposition III is pretermitted for the same reason which applies to Proposition II.

### Proposition IV

Under this proposition, defendant insists that the court erred in refusing defendant's requested affirmative instructions because plaintiff failed to prove that plaintiff gave 45 days' notice to surety as required by § 16, Title 50, Code 1940.

We are somewhat at a loss to understand this argument in view of the following excerpt from the record:

"MR. BREWER: For the sake of the record, I will state that a registered notice as required by Title 50, Section 16, Code of Alabama, 1940, was given to the American Casualty Company of Reading, Pennsylvania within the statutory period for filing suit and that more than 45 days thereafter suit was filed on the instant claim, the notice being of the claim of the plaintiff in this case.

"MR. CLARK: We stipulate that."

Error is not shown under this proposition.

### Proposition V

Defendant argues that the complaint was demurrable because it contains no averment that the contractor has not made payment for the labor and materials sued for. The complaint recites that " * * * defendant has failed and refused to pay the claim of the plaintiff." Defendant has not called to our attention any ground of demurrer which points out the failure to allege that the contractor has not made payment.

A ground of demurrer that the complaint sets forth no cause of action is to that extent a general demurrer not authorized by § 236, Title 7, Code 1940. We do not find a specific ground which properly points out the defect now complained of, and, therefore, are of opinion that error cannot be predicated on overruling the demurrer insofar as that claim is concerned. Sarber v. Hollon, 265 Ala. 323, 91 So.2d 229.

### Proposition VI

Defendant complains of argument allegedly made by plaintiff that Atkinson had been discharged by Irby " * * * on account of the matters and things here in controversy."

The argument is not set out in the record. It does not appear that defendant formally objected to the argument or moved the court to instruct the jury not to consider the argument or to declare a mistrial, although the court said: "Overruled." Moreover, the court instructed the jury that "there is no evidence as to what the reason for the dissolution of the employment of Mr. Atkinson was," and that "The statements of the attorneys are simply their inferences, but that is not evidence in the case."

■ With respect to remarks of counsel, much discretion is allowed the trial court; Phillips v. Ashworth, 220 Ala. 237, 241, 124 So. 519; and the appellate court will not interfere where this discretion is not abused. Southern Ry. Co. v. Jarvis, 266 Ala. 440, 446, 97 So.2d 549.

■ On the record now before us, we are of opinion that defendant has not shown reversible error under this proposition. We are not, however, to be understood as holding that plaintiff did have a right to argue that Atkinson had been fired on account of his alleged actions relating to the bond sued on. In the event of another trial, the possibility of improper argument will doubtless be avoided.

### Proposition VII

■ Defendant argues that it was entitled to the affirmative charge because plaintiff failed to prove a consideration for defendant's alleged promise to answer for Bruce's debt.

"It is well settled that if a contract of guaranty is made contemporaneously with the original contract which it guarantees, the consideration for the original contract is sufficient to support the contract of guaranty. Dilworth v. Holmes Furn. & Vehicle Co., 183 Ala. 608, 62 So. 812; Merritt v. Coffin, 152 Ala. 474, 44 So. 622. * * *" Levy v. Allen, 257 Ala. 326, 332, 58 So.2d 617.

■ The labor and materials bond here sued on, if executed at all, was executed contemporaneously with the building contract. The bond was given to assure or guarantee that the contractor would pay certain debts that he would incur in performing his obligations under the building contract. We hold that in such a case, the consideration for the building contract is sufficient to support the bond.

In the building contract, it was agreed that: "The contractor shall furnish all the materials and perform all of the work shown on the Drawings and described in the Specifications * * *." The labor and materials bond was an assurance or guaranty, that the contractor would perform his obligation to pay laborers and materialmen. The contractor's obligation to pay arose out of the building contract and the bond assured or guaranteed that the contractor would perform that obligation.

■ Where the contracts are made contemporaneously and the guaranty contract expressly refers to and incorporates the contract guaranteed, then the consideration for the contract guaranteed is sufficient to support the contract of guaranty. Levy v. Allen, supra.

Defendant does not deny that the building contract was supported by a good and valuable consideration. The bond recites that the building contract shall be deemed a part of the bond. We hold that there was no failure to prove a consideration for the bond. Defendant's argument under this proposition is without merit.

### Propositions VIII, IX, and X

We pretermit consideration of these propositions for the reason stated under Proposition II.

### Proposition XI

Defendant's principal insistence is that the court erred in refusing the affirmative charge which defendant duly requested in writing. Defendant argues that it "* * was entitled to the general affirmative charge as requested on the basis that it was clearly shown that the purported instrument

sued upon was of the nature intended by the statute of frauds to be subscribed by the party sought to be charged therewith, or some other person by him thereunto lawfully authorized in writing, when in fact it was openly admitted that John Boswell, who actually signed the name James Atkinson, as attorney-in-fact of American Casualty Company, to the instrument in question has never had the written authority of either the defendant or the said Atkinson to do so."

Plaintiff contends that the undertaking of defendant is not within the statute of frauds, and, therefore, not required by subdivision (3) of § 3, Title 20, Code 1940, to be in writing and subscribed by the party to be charged therewith, or some other person by him thereunto lawfully authorized in writing; or, plaintiff contends, as we understand his argument that, on the evidence, the jury could find that the bond sued on was not a promise required to be in writing and subscribed as required by the statute.

Plaintiff contends in brief as follows:

"The bond itself is a direct, primary and original undertaking on the part of American Casualty Company. The obligee and any of the class of persons claiming rights as labor and materialmen can pursue their remedy against either or both, and it is no condition precedent to the maintenance of an action against the so-called surety that they must first seek redress against the contractor or principal.

"Actually, the distinction which is drawn by our Court in applying the fact situation in each case is whether the promise was original or collateral. If the promise is original, a suretyship relationship exists and if the promise is collateral, then the promise is one of guaranty. * * *"

The difference between suretyship and guaranty is well known, Davenport & Harris Undertaking Co. v. Roberson, 219 Ala. 203, 205, 121 So. 733; although the distinction between the two classes of undertakings is often shadowy, and often not observed by judges and text writers, Saint v. Wheeler & Wilson Manufacturing Company, 95 Ala. 362, 371, 10 So. 539. We are not advised, however, that this court has made the distinction that a contract of guaranty is within the statute of frauds while a contract of suretyship is not. On the other hand, this court has said:

"* * * Appellant attaches importance to the fact that appellee guaranteed payment 'at the time and place and in the manner in said agreement provided,' referring to the primary contract. But this language is without significance in the present contention, for, whether the contract binding upon appellee was one of guaranty or suretyship, in either event appellee became bound for Davidson's performance of his undertaking 'at the time and place and in the manner in said agreement provided'; the only question being whether that responsibility was absolute or conditional.

"Contracts of suretyship and of guaranty have much in common—in both the undertaking is to answer for the debt, default, or miscarriage of another. * * *" J. W. Watkins Med. Co. v. Lovelady, et al., 186 Ala. 414, 418, 419, 65 So. 52, 54.

In Craswell v. Biggs, 160 Or. 547, 86 P.2d 71, the court held that a subcontractor's performance bond was within the statute of frauds. The court observed that the Oregon statute is more comprehensive and drastic than most of the statutes of other states; but the court said that under the Oregon Code an agreement to answer for the debt, default or miscarriage of another must be in writing and "This statute is especially applicable to the facts in this case."

In Horning v. Fidelity & Deposit Co. of Maryland, Ohio App., 35 N.E.2d 978, the Court of Appeals of Ohio held that, in a bond given to release certain chattels from an attachment, the promise of the surety

was clearly collateral and conditional and, as there is no memorandum or note thereof in writing and signed by the party to be charged, etc., it comes clearly within the statute and is unenforceable.

■ We are of opinion that the circumstance that a promise is one of suretyship, as distinguished from one of guaranty, is not a sufficient reason to take without the statute of frauds a promise to answer for the debt of another.

■ The question whether a promise was original or collateral is one of fact for the jury where the evidence as to the terms of the promise is conflicting or where the language used by the parties is ambiguous. On the other hand, since the construction of an agreement is in general a question of law, where the facts are admitted or the evidence is not in conflict and the terms of the promise are clear and unambiguous, it is proper for the court to decide as a matter of law whether the promise is original or collateral. 49 Am.Jur. 424, Statute of Frauds, § 72; 20 A.L.R. 246.

This court has said:

" * * * There are many cases, where the promise was a verbal one, when the acts of the parties are admitted to explain; and if equivocal expressions were used in a written undertaking, then it would be open to explanation. This was, in effect, the reasoning of Bailey, J., in Simpson v. Penton, 2 Cromp. & Mees. 430; but here, under the force of our own decisions, we are bound to construe the writing as an original undertaking; there is no ambiguity, and that being the case, the only inquiry is, has it been acted upon by the appellees? If they parted with the goods on the faith of it, it makes no difference to whom they were charged, as the rights of the parties must be determined by the writing; and the fact that it was treated by those to whom it was addressed as a collateral, instead of a direct undertaking,

cannot change it into the former. * * * " Scott v. Myatt & Moore, 24 Ala. 489, 494.

See also: Boykin & McRae v. Dohlonde & Co., 37 Ala. 577; Borden v. King Mill & Lumber Co., 214 Ala. 308, 107 So. 455; Day v. Adcock, 11 Ala.App. 471, 66 So. 911.

The terms of the promise here sued on are not in conflict. Plaintiff states in brief:

" * * * The Appellee submits that under the evidence it is not only a reasonable inference that Mr. Devine relied on the faith of the bond and extended his credit to this defendant, but that it is the only logical inference which can be drawn from this testimony. * * * "

■ If plaintiff parted with material or labor on the faith of the bond, "it makes no difference to whom they were charged, as *the rights of the parties must be determined by the writing.*" (Emphasis Supplied.) Scott v. Myatt & Moore, supra. The fact that the bond was treated by plaintiff as a direct instead of a collateral undertaking cannot change it into a direct undertaking.

The ultimate question for decision is whether the labor and materials bond, by its terms, is a promise to answer for the debt of another and within the statute. If the promise is an original undertaking by defendant to pay its own debt, or if the language of the writing will support the inference that the promise is such an undertaking, then the court did not err in submitting to the jury the question whether the promise was or was not within the statute and the judgment is not due to be reversed for refusal of the affirmative charge requested by defendant. On the other hand, if the language of the promise is unambiguous, and sets out a collateral promise to pay the contractor's debt, then, because the plaintiff has not proved a promise subscribed by defendant or by some other person by defendant thereunto lawfully authorized in writing, the court erred in refusing the affirmative

**640**

charge requested by defendant and the judgment must be reversed.

The bond recites in pertinent part:

"(e) This bond is given pursuant to the terms of Act No. 39, General Laws of Alabama, approved February 8, 1935, entitled 'An Act to further provide for bond of Contractors on State and other public works and suits thereon'."

Act No. 39, 1935 Acts, page 70, is codified as § 16, Title 50, Code 1940, and, as here pertinent, recites:

"Any person * * * entering into a contract with * * * any * * * municipal corporation or subdivision thereof * * * for the * * * construction * * * of any public buildings * * * shall be required * * to execute * * * another bond * * with the obligation that such contractor * * * shall promptly make payments to all persons supplying him * * * with labor, materials * * * for * * * the work * * *; and any person * * * that has furnished labor, materials * * * for * * * any * * * public work * * * and payment for which has not been made, shall be authorized to institute an action upon said bond in his * * * name * * * and to have their rights * * * adjudicated in such action and judgment rendered thereon; provided, however, that no suit shall be instituted * * * until after * * * written notice to the surety * * *. In the event the surety or contractor fails to pay * * within forty-five days * * * then such person * * * shall be entitled to recover of the contractor and surety, in addition to the amount of said claim, a reasonable attorney's fee * * *."

With reference to said act, this court has said that there was no compulsion on the surety to execute such a bond, but since the surety did so, knowing the purpose for which the bond was given and being charged with knowledge of the law which required the bond, the bond must be construed and applied as if the parties making it had complied with the law. Universal Electric Const. Co. of Alabama v. Robbins, 239 Ala. 105, 194 So. 194. The bond shows on its face that it was executed in compliance with the statute and the court is authorized to read into it the provisions of the statute, "and give it the form and effect the statute contemplated, regardless of its contents." 239 Ala. 109, 194 So. 198. In short the statute is written into the bond.

We are of opinion that if the statute is written into the bond as to the contractor and surety, the statute is also written into the bond as to the obligee and the suppliers of labor and materials who rely on the bond.

The rule in this state is of long standing that, " * * * if the transaction be such that the third person is responsible to the person who supplies the articles, the promise of the defendant is collateral, and, if oral, not binding." Boykin & McRae v. Dohlonde & Co., 37 Ala. 577, 581.

In determining liability of the surety on a contractor's bond which had been given under a statute, General Acts 1927, page 356, similar in many respects to § 16, Title 50, this court said, " * * * if liability be not shown against the contractor, clearly none can be established against the surety." Magic City Paint & Varnish Co. v. American Surety Co., 228 Ala. 40, 43, 152 So. 42, 44.

In another case, in action on contractor's bond given under General Acts 1927, page 356, and General Acts 1927, page 37, this court said, "Kroell can recover no greater balance from the third surety than he can from the principal in the bond." Royal Indemnity Co. v. Young & Vann Supply Co., 225 Ala. 591, 595, 144 So. 532, 535.

Thus it appears that the holdings of this court have been that the promise of the surety on a statutory bond for labor

:and materials, furnished to the contractor, is to be regarded as a promise to pay for articles furnished to a third person, the contractor, and that the contractor's liability for the articles furnished to him is the limit of the liability of the surety and a necessary element to the surety's liability.

▆ In the instant case, the contractor, under the statute and under his own promise, is responsible to plaintiff for the price of the labor and material here sued for. The obligation written into the bond by the statute is "that such contractor * * * shall promptly make payments." Clearly, this is a case where the third party, the contractor, is responsible to the person who supplies the articles and the promise of the surety is collateral and within the statute of frauds under the rule stated in Boykin & McRae v. Dohlonde & Co., supra.

▆ Because plaintiff failed to prove a promise in writing and subscribed as required by the statute, the defendant was entitled to the affirmative charge and its refusal was reversible error.

As noted above, the court sustained defendant's demurrer to plaintiff's replications 2, 3, and 4, wherein plaintiff alleged that defendant was estopped to assert the statute of frauds on the principle that, if defendant had knowledge that plaintiff and others similarly situated were relying on the purported bond to their detriment, then defendant by remaining silent estopped itself to deny the validity of the bond.

Plaintiff, in brief, asks that the ruling on demurrer to these replications be reviewed, in the event the judgment is reversed, so that, on another trial, the court and parties will be advised on this point.

▆ We do not find any cross-assignment of error written in the record, as required by Supreme Court Rule 3, and, in this circumstance, the question is not before us for decision. Waters v. American Gas Co. of Reading, Pa., 261 Ala. 252, 73 So.2d 524; Ruck v. Ruck, 265 Ala. 29, 89 So.2d 274.

For error in refusing the affirmative charge requested in writing by defendant, the judgment is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.

## ON REHEARING

COLEMAN, Justice.

On application for rehearing, plaintiff argues that defendant executed the labor and materials bond here sued on in performance of defendant's obligation to do so, which obligation defendant incurred by executing the bid bond.

Plaintiff argues that, by the bid bond, contractor and defendant agreed that, if the contractor's bid was accepted by the owner, the contractor and defendant would do one of two things, namely: (1) execute and deliver a contract together with a performance bond and a labor and materials bond; or, (2) refuse to execute the contract and pay to the owner five per cent of the amount of the contractor's bid.

Plaintiff says that defendant chose the first alternative and, in executing the labor and materials bond, was merely carrying out defendant's own primary obligation incurred by executing the bid bond, so that, the labor and materials bond became the primary obligation of defendant and not a promise to answer for the debt, default, or miscarriage of the contractor. Plaintiff says that, as a result, the labor and materials bond was not a collateral undertaking by defendant, but became defendant's original undertaking to pay its own debt or to discharge its own obligation.

No authority is cited in brief filed on rehearing to support plaintiff's argument nor do we understand that any case cited in briefs previously filed supports the argument. We think that the argument is fallacious in that it fails to state correctly the obligation of defendant under the bid bond.

Assuming arguendo that defendant, by executing the bid bond, obligated itself to execute the labor and materials bond, we are of opinion that the obligation, if any, of defendant remained an obligation to execute merely another promise to answer for the debt, default, or miscarriage of contractor, to wit, the labor and materials bond, which was such a promise and within the statute of frauds, as we undertook to show on original deliverance.

So, if execution of the labor and materials bond should be regarded, arguendo, as performance of defendant's obligation under the bid bond, the labor and materials bond still remains a promise to answer which must be in writing under the statute of frauds.

Opinion extended.

Application overruled.

LIVINGSTON, C. J., and GOODWYN and HARWOOD, JJ., concur.