MADDOX, Justice.
The issue is whether the trial court erred in dismissing the plaintiff’s indemnity claim on the basis that the indemnity agreement, if in fact there was one, did not comply with the Statute of Frauds, Ala.Code 1975, § 8-9-2(3). We affirm.
In 1988 Gary Aderhold was invited to become a shareholder in a corporation named Travel Management, Inc. (hereinafter “TMI”). The other principals of TMI were Jerry Coleman, Michael Sparkman, and Clay Nottrodt. Aderhold had attended high school with Coleman but had had no personal acquaintance with Sparkman or Nottrodt until he became a shareholder in TMI.
Aderhold was not required to invest any money in TMI in order to become a shareholder. Rather, in late October 1988 Ader-hold personally guaranteed a note to Am-South Bank in order to provide the company with start-up capital and also guaranteed an ARC letter of credit.[1] The capital and the letter of credit were necessary before TMI could conduct business. Ader-hold had the other individual shareholders, Coleman, Sparkman, and Nottrodt, execute agreements to indemnify him.
Aderhold attended shareholders’ meetings but left the day-to-day operations of the business to Coleman, Sparkman, and Nottrodt. Each partner owned a 25% interest in TMI.
Relations between Aderhold and his co-owners began deteriorating a few months after TMI began operations. At some point, one of Aderhold’s partners told him that they wanted to sell a controlling interest in TMI to a third party. At the time, Aderhold did not know who this third party was. In order for Coleman, Sparkman, and Nottrodt to have enough shares to sell a controlling interest to the third party, they had to repurchase Aderhold’s 25% interest in the company. Aderhold agreed with Coleman, Sparkman, and Nottrodt to allow a repurchase of his interest.
The conditions for Aderhold’s selling his interest in TMI back to the corporation were set out in a letter written in April 1989, which was signed by Coleman, Spark-man, and Nottrodt. In the agreement, Coleman, Sparkman, and Nottrodt agreed to indemnify Aderhold as to the AmSouth note, the ARC letter of credit, and any *669 other liabilities of TMI. Aderhold knew that his partners had to buy him out before they could sell to a new investor.
In addition to agreeing to indemnify Ad-erhold as to all liabilities of the company, Coleman, Sparkman, and Nottrodt also agreed to help Aderhold start another travel agency and agreed to maintain a listing for Aderhold with ARC. They also agreed to pay Aderhold $20,000 for his stock in TMI. They paid him $5,000 down, to be followed by periodic payments until the remaining $15,000 was paid in full. Ader-hold later received payments totalling an additional $3,000 from TMI. Aderhold received another letter dated April 26, 1989, which confirmed TMI’s intention to indemnify Aderhold as to all liability. This letter was signed by Michael Sparkman as president of TMI.
Four Seasons Travel, Inc., issued a letter indicating its intent to purchase a 51% interest in TMI. This letter of intent states that “Four Seasons does covenant and agree to become a guarantor on [the debt to AmSouth] up to an amount not exceeding $38,500.00.”
Aderhold subsequently transferred his stock in TMI to the corporation and resigned from the company’s board of directors. Before doing so, however, he had Coleman, Sparkman, and Nottrodt execute another indemnity agreement for his protection. This document required Coleman, Sparkman, and Nottrodt to indemnify him for all of TMI’s debts. In addition, Coleman, Sparkman, and Nottrodt signed a note making themselves individually responsible for the remaining $15,000 that TMI owed Aderhold for the sale of his stock.
Four Seasons and TMI began doing business together. TMI defaulted on its debt to AmSouth. AmSouth sued Aderhold as guarantor, and Aderhold sued TMI, its stockholders, and Four Seasons for indemnity. The trial court entered a summary judgment in AmSouth’s favor for $26,-636.00, and Aderhold began making payments.
Aderhold settled his indemnity claim with one of the TMI stockholders, and another filed a bankruptcy petition. The remaining stockholder did not appear at trial, and the bench trial proceeded against Four Seasons. Aderhold admitted that there was no writing reflecting that Four Seasons had agreed to indemnify him, but he argued that Four Seasons had guaranteed the debt in order to absolve him from liability. At the close of Aderhold’s case-in-chief, the trial court entered a Rule 41(b), Ala.R.Civ. P., involuntary dismissal of Aderhold’s claim, on the basis that it was barred by the Statute of Frauds. The trial court overruled Aderhold’s post-judgment motions, entered a judgment for Four Seasons, and made that judgment final pursuant to Rule 54(b), Ala.R.Civ.P. Aderhold appeals.
Aderhold argues first that Four Seasons must indemnify him because, he contends, Four Seasons acquired 51% of TMI’s stock after TMI had agreed to indemnify him. Aderhold argues that, in effect, the corporations merged, and that Four Seasons thereby became responsible for TMI’s debts. We disagree.
It is true that “[w]hen corporations merge, the successor remains liable for its predecessor’s liabilities,” Rivers v. Stihl, Inc., 434 So.2d 766, 771 (Ala.1983), but Four Seasons and TMI did not merge. Four Seasons merely agreed to buy 51% of TMI’s stock. Even if Four Seasons completed the stock purchase, we note that a shareholder has no obligation to the corporation’s creditors other than to pay to the corporation the issue price of the shares. Ala.Code 1975, § 10-2A-43(a).
Aderhold argues next that he was a direct beneficiary of the contract between Four Seasons and TMI, in which Four Seasons agreed to guarantee the debt to Am-South, and, consequently, that he had a right to enforce that contract. The trial court agreed that Aderhold was a beneficiary of the contract but found that, although Four Seasons became a guarantor, it did not make a written agreement to release or indemnify him. The trial court concluded that the Statute of Frauds required that any such agreement be in writ *670 ing, and that Four Seasons and Aderhold were co-guarantors of the debt.
The Statute of Frauds provides in relevant part:
“In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
[[Image here]]
“(3) Every special promise to answer for the debt, default or miscarriage of another;”
Ala.Code 1975, § 8-9-2(3).
This provision requires that promises of indemnity between co-sureties be in writing to be enforceable. E.g., Wilder v. Clark, 263 Ala. 55, 56, 81 So.2d 273, 274 (1955); Posten v. Clem, 201 Ala. 529, 530, 78 So. 883, 884 (1918). Contracts of surety-ship differ in some respects from those of guaranty, primarily in that a surety is bound with the principal debtor as an original promisor, whereas a guarantor is bound only if the creditor cannot collect from the principal debtor, Valley Mining Corp. v. Metro Bank, 383 So.2d 158, 162 (Ala.1980) (quoting Davenport & Harris Undertaking Co. v. Roberson, 219 Ala. 203, 205, 121 So. 733, 734 (1929)), but insofar as the Statute of Frauds is concerned, both are “special promise[s] to answer for the debt, default, or miscarriage of another.” § 8-9-2(3); American Casualty Co. of Reading, Pa. v. Devine, 275 Ala. 628, 638, 157 So.2d 661, 670 (1963) (quoting J.W. Watkins Medical Co. v. Lovelady, 186 Ala. 414, 419, 65 So. 52, 54 (1914)). Thus, indemnity agreements between co-guarantors must be in writing to be enforceable.
We conclude that the guaranty by Four Seasons of the AmSouth debt may have been for Aderhold’s benefit, but, without an expression of an intent to indemnify him, its effect was to make Four Seasons and Aderhold co-guarantors. To hold otherwise would be to ignore the clear requirement of the Statute of Frauds that a “promise to answer for the debt ... of another” (emphasis added) be in writing.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ„ concur.

. ARC is Airlines Reporting Corporation. A travel agency must have a letter of credit with ARC before it can issue airline tickets.